JAMES DICKSON PHILLIPS, Circuit Judge:
 

 The question is whether Richmond Metal Finishers (RMF), a bankrupt debtor in possession, should have been allowed to reject as executory a technology licensing agreement with Lubrizol Enterprises (Lubrizol) as licensee. The bankruptcy court approved rejection pursuant to 11 U.S.C. § 365(a), 34 B.R. 521 stay denied 36 B.R. 270; but the district court reversed on the basis that within contemplation of § 365(a), the contract was not executory and, alternatively, that rejection could not reasonably be expected substantially to benefit the bankrupt debtor. 38 B.R. 341. We reverse and remand for entry of judgment in conformity with that entered by the bankruptcy court.
 

 
 *1045
 
 I
 

 In July of 1982, RMF entered into the contract with Lubrizol that granted Lubri-zol a nonexclusive license to utilize a metal coating process technology owned by RMF. RMF owed the following duties to Lubrizol under the agreement: (1) to notify Lubrizol of any patent infringement suit and to defend in such suit; (2) to notify Lubrizol of any other use or licensing of the process, and to reduce royalty payments if a lower royalty rate agreement was reached with another licensee; and (3) to indemnify Lu-brizol for losses arising out of any misrepresentation or breach of warranty by RMF. Lubrizol owed RMF reciprocal duties of accounting for and paying royalties for use of the process and of cancelling certain existing indebtedness. The contract provided that Lubrizol would defer use of the process until May 1, 1983, and in fact, Lubrizol has never used the RMF technology-
 

 RMF filed a petition for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code on August 16, 1983. As part of its plan to emerge from bankruptcy, RMF sought, pursuant to § 365(a), to reject the contract with Lubrizol in order to facilitate sale or licensing of the technology unhindered by restrictive provisions in the Lubri-zol agreement. On RMF’s motion for approval of the rejection, the bankruptcy court properly interpreted § 365 as requiring it to undertake a two-step inquiry to determine the propriety of rejection: first, whether the contract is executory; next, if so, whether its rejection would be advantageous to the bankrupt.
 

 Making that inquiry, the bankruptcy court determined that both tests were satisfied and approved the rejection. But, as indicated, the district court then reversed that determination on the basis that neither test was satisfied and disallowed the rejection. This appeal followed.
 

 II
 

 We conclude initially that, as the bankruptcy court ruled, the technology licensing agreement in this case was an ex-ecutory contract, within contemplation of 11 U.S.C. § 365(a). Under that provision a contract is executory if performance is due to some extent on both sides.
 
 NLRB v. Bildisco and Bildisco,
 
 — U.S. -, -, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984). This court has recently adopted Professor Countryman’s more specific test for determining whether a contract is “ex-ecutory” in the required sense. By that test, a contract is executory if the “ ‘obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.’ ”
 
 Gloria Manufacturing Corp. v. International Ladies’ Garment Workers’ Union,
 
 734 F.2d 1020, 1022 (4th Cir.1984) (quoting Countryman,
 
 Executory Contracts in Bankruptcy: Part I,
 
 57 Minn.L.Rev. 439, 460 (1973). This issue is one of law that may be freely reviewed by successive courts.
 

 Applying that test here, we conclude that the licensing agreement was at the critical time executory. RMF owed Lubrizol the continuing duties of notifying Lubrizol of further licensing of the process and of reducing Lubrizol’s royalty rate to meet any more favorable rates granted to subsequent licensees. By their terms, RMF’s obligations to give notice and to restrict its right to license its process at royalty rates it desired without lowering Lubrizol’s royalty rate extended over the life of the agreement, and remained unperformed. Moreover, RMF owed Lubrizol additional contingent duties of notifying it of suits, defending suits and indemnifying it for certain losses.
 

 The unperformed, continuing core obligations of notice and forbearance in licensing made the contract executory as to RMF. In
 
 Fenix Cattle Co. v. Silver (In re Select-A-Seat Corp.),
 
 625 F.2d 290, 292 (9th Cir.1980), the court found that an obligation of a debtor to refrain from selling software packages under an exclusive licensing agreement made a contract executory as to the debtor notwithstanding the continuing
 
 *1046
 
 obligation was only one of forbearance. Although the license to Lubrizol was not exclusive, RMF owed the same type of unperformed continuing duty of forbearance arising out of the most favored licensee clause running in favor of Lubrizol. Breach of that duty would clearly constitute a material breach of the agreement.
 

 Moreover, the contract was further executory as to RMF because of the contingent duties that RMF owed of giving notice of and defending infringement suits and of indemnifying Lubrizol for certain losses arising out of the use of the technology. Contingency of an obligation does not prevent its being executory under § 365.
 
 See In re Smith Jones, Inc.,
 
 26 B.R. 289, 292 (Bankr.D.Minn.1982) (warranty obligations executory as to promisor);
 
 In re O.P.M. Leasing Services, Inc.,
 
 23 B.R. 104, 117 (Bankr.S.D.N.Y.1982) (obligation to defend infringement suits makes contract executo-ry as to promisor). Until the time has expired during which an event triggering a contingent duty may occur, the contingent obligation represents a continuing duty to stand ready to perform if the contingency occurs. A breach of that duty once it was triggered by the contingency (or presumably, by anticipatory repudiation) would have been material.
 

 Because a contract is not executory within the meaning of § 365(a) unless it is executory as to both parties, it is also necessary to determine whether the licensing agreement was executory as to Lubrizol.
 
 See Bildisco,
 
 — U.S. at -, 104 S.Ct. at 1194 n. 6. We conclude that it was.
 

 Lubrizol owed RMF the unperformed and continuing duty of accounting for and paying royalties for the life of the agreement. It is true that a contract is not executory as to a party simply because the party is obligated to make payments of money to the other party.
 
 See Smith Jones,
 
 26 B.R. at 292; H.Rep. No. 95-595, 95th Cong., 2d Sess. 347,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6303-04. Therefore, if Lubrizol had owed RMF nothing more than a duty to make fixed payments or cancel specified indebtedness under the agreement, the agreement would not be executory as to Lubri-zol. However, the promise to account for and pay royalties required that Lubrizol deliver written quarterly sales reports and keep books of account subject to inspection by an independent Certified Public Accountant. This promise goes beyond a mere debt, or promise to pay money, and was at the critical time executory.
 
 See Fenix Cattle,
 
 625 F.2d at 292. Additionally, subject to certain exceptions, Lubrizol was obligated to keep all license technology in confidence for a number of years.
 

 Since the licensing agreement is ex-ecutory as to each party, it is executory within the meaning of § 365(a), and the district court erred as a matter of law in reaching a contrary conclusion.
 
 *
 

 Ill
 

 There remains the question whether rejection of the executory contract would be advantageous to the bankrupt.
 
 See Borman’s, Inc. v. Allied Supermarkets, Inc.,
 
 706 F.2d 187, 189 (6th Cir.1983). Courts addressing that question must start with the proposition that the bankrupt’s decision upon it is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors.
 
 See Bildisco,
 
 — U.S. at -, 104 S.Ct. at 1195 (noting that the business judgment rule is the “traditional” test);
 
 Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad,
 
 318 U.S. 523, 550, 63 S.Ct. 727, 742, 87 L.Ed. 959 (1943) (applying business
 
 *1047
 
 judgment rule to bankrupt’s decision whether to affirm or reject lease);
 
 Control Data Corp. v. Zelman (In re Minges),
 
 602 F.2d 38, 43 (2d Cir.1979) (applying
 
 Institutional Investors
 
 outside of railroad reorganizations);
 
 Carey v. Mobil Oil Corp. (In re Tilco, Inc.),
 
 558 F.2d 1369, 1372-73 (10th Cir.1977) (applying
 
 Institutional Investors
 
 to rejection of gas contracts).
 

 As generally formulated and applied in corporate litigation the rule is that courts should defer to — should not interfere with — decisions of corporate directors upon matters entrusted to their business judgment except upon a finding of bad faith or gross abuse of their “business discretion.”
 
 See, e.g., Lewis v. Anderson,
 
 615 F.2d 778, 782 (9th Cir.1979);
 
 Polin v. Conductron Corp.,
 
 552 F.2d 797, 809 (8th Cir.1977). Transposed to the bankruptcy context, the rule as applied to a bankrupt’s decision to reject an executory contract because of perceived business advantage requires that the decision be accepted by courts unless it is shown that the bankrupt’s decision was one taken in bad faith or in gross abuse of the bankrupt’s retained business discretion.
 

 In bankruptcy litigation the issue is of course first presented for judicial determination when a debtor, having decided that rejection will be beneficial within contemplation of § 365(a), moves for approval of the rejection. The issue thereby presented for first instance judicial determination by the bankruptcy court is whether the decision of the debtor that rejection will be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice. That issue is one of fact to be decided as such by the bankruptcy court by the normal processes of fact adjudication. And the resulting fact determination by the bankruptcy court is perforce then reviewable up the line under the clearly erroneous standard.
 
 See Minges,
 
 602 F.2d at 43;
 
 see generally
 
 1
 
 Collier on Bankruptcy
 
 ¶ 3.03(8)(b) (L. King 15th ed. 1984).
 

 Here, the bankruptcy judge had before him evidence not rebutted by Lubrizol that the metal coating process subject to the licensing agreement is RMF’s principal asset and that sale or licensing of the technology represented the primary potential source of funds by which RMF might emerge from bankruptcy. The testimony of RMF’s president, also factually uncontested by Lubrizol, indicated that sale or further licensing of the technology would be facilitated by stripping Lubrizol of its rights in the process and that, correspondingly, continued obligation to Lubrizol under the agreement would hinder RMF’s capability to sell or license the technology on more advantageous terms to other potential licensees. On the basis of this evidence the bankruptcy court determined that the debtor’s decision to reject was based upon sound business judgment and approved it.
 

 On appeal the district court simply found to the contrary that the debtor’s decision to reject did not represent a sound business judgment. The district court’s determination rested essentially on two grounds: that RMF’s purely contingent obligations under the agreement were not sufficiently onerous that relief from them would constitute a substantial benefit to RMF; and that because rejection could not deprive Lubri-zol of all its rights to the technology, rejection could not reasonably be found beneficial. We conclude that in both of these respects the district court’s factual findings, at odds with those of the bankruptcy court, were clearly erroneous and cannot stand.
 

 A
 

 In finding that the debtor’s contingent obligations were not sufficiently onerous that relief from them would be beneficial, the district court could only have been substituting its business judgment for that of the debtor. There is nothing in the record from which it could be concluded that the debtor’s decision on that point could not have been reached by the exercise of sound (though possibly faulty) business judgment in the normal process of evaluating alternative courses of action. If
 
 *1048
 
 that could not be concluded, then the business judgment rule required that the debt- or’s factual evaluation be accepted by the court, as it had been by the bankruptcy court.
 
 See Schein v. Caesar’s World, Inc.,
 
 491 F.2d 17, 20 (5th Cir.1974).
 

 B
 

 On the second point, we can only conclude that the district court was under a misapprehension of controlling law in thinking that by rejecting the agreement the debtor could not deprive Lubrizol of all rights to the process. Under 11 U.S.C. § 365(g), Lubrizol would be entitled to treat rejection as a breach and seek a money damages remedy; however, it could not seek to retain its contract rights in the technology by specific performance even if that remedy would ordinarily be available upon breach of this type of contract.
 
 See In re Waldron,
 
 36 B.R. 633, 642 n. 4 (Bankr.S.D.Fla.1984). Even though § 365(g) treats rejection as a breach, the legislative history of § 365(g) makes clear that the purpose of the provision is to provide only a damages remedy for the non-bankrupt party. H.Rep. No. 95-595, 95th Cong., 2d Sess. 349,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6305. For the same reason, Lubrizol cannot rely on provisions within its agreement with RMF for continued use of the technology by Lubrizol upon breach by RMF. Here again, the statutory “breach” contemplated by § 365(g) controls, and provides only a money damages remedy for the non-bankrupt party. Allowing specific performance would obviously undercut the core purpose of rejection under § 365(a), and that consequence cannot therefore be read into congressional intent.
 

 IV
 

 Lubrizol strongly urges upon us policy concerns in support of the district court’s refusal to defer to the debtor’s decision to reject or, preliminarily, to treat the contract as executory for § 365(a) purposes. We understand the concerns, but think they cannot control decision here.
 

 It cannot be gainsaid that allowing rejection of such contracts as executory imposes serious burdens upon contracting parties such as Lubrizol. Nor can it be doubted that allowing rejection in this and comparable cases could have a general chilling effect upon the willingness of such parties to contract at all with businesses in possible financial difficulty. But under bankruptcy law such equitable considerations may not be indulged by courts in respect of the type of contract here in issue. Congress has plainly provided for the rejection of execu-tory contracts, notwithstanding the obvious adverse consequences for contracting parties thereby made inevitable. Awareness by Congress of those consequences is indeed specifically reflected in the special treatment accorded to union members under collective bargaining contracts,
 
 see Bildisco,
 
 — U.S. at -, 104 S.Ct. at 1193-96, and to lessees of real property,
 
 see
 
 11 U.S.C. § 365(h). But no comparable special treatment is provided for technology licensees such as Lubrizol. They share the general hazards created by § 365 for all business entities dealing with potential bankrupts in the respects at issue here.
 

 The judgment of the district court is reversed and the ease is remanded for entry of judgment in conformity with that entered by the bankruptcy court.
 

 REVERSED AND REMANDED.
 

 *
 

 We disagree with the district court’s characterization of the transaction as effectively a completed sale of property. If an analogy is to be made, licensing agreements are more similar to leases than to sales of property because of the limited nature of the interest conveyed. Congress expressly made leases subject to rejection under § 365 in order to "preclude any uncertainty as to whether a lease is an executory contract" under § 365. 2
 
 Collier on Bankruptcy
 
 ¶ 365.02 (I.. King 15th ed. 1984).