**In re LOGICAL SOFTWARE, INC., Debtor.**

**Bankruptcy No. 86–10324–JNG.**

United States Bankruptcy Court, D. Massachusetts (Boston).

Nov. 7, 1986.

**684**

Paul D. Moore, Foley, Hoag & Eliot, Boston, Mass., for debtor/movant.

Robert Somma, Goldstein & Manello, Boston, Mass., for respondent.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The matter before the Court is the Debtor's Motion for Authority to Reject Executory Contract with Infosystems Technology, Inc., ("ITI"), pursuant to section 365(a) of the Bankruptcy Code. ITI objects to the motion. Both parties have submitted memoranda and affidavits in support of their respective positions. A hearing was held on the matter on September 8, 1986, at which time the parties voiced no objection to having the Court decide the matter without an evidentiary hearing.

## FACTS

There is no serious dispute as to the facts. The Debtor commenced its case under Chapter 11 by filing a voluntary petition on March 14, 1986. It is operating its business and managing its affairs as debtor or in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Since July, 1981, the Debtor has been engaged in the business of developing, licensing and maintaining computer software. The Debtor licenses its computer technology under a series of exclusive and non-exclusive licenses to various licensees or developers for distribution. Occasionally, it sells its software to end users. The Debtor's two principal products are its LOGIX and Softshell software. The Debtor's software and its rights to license or to sell that software constitute its principal assets. Accordingly, the sale, licensing or distribution of the Debtor's software is the major potential source of funds available for the Debtor's reorganization. Since the commencement of the bankruptcy case, the Debtor has been analyzing its existing license or distribution agreements and negotiating with third parties with respect to new agreements. The Debtor has also attempted to resolve outstanding disputes with respect to existing agreements, including a long-standing dispute with ITI, to enable it to project future royalties.

The Debtor entered into a Distribution Agreement (the "Agreement") with ITI on or about March 30, 1984. Under the Agreement, the Debtor granted ITI the exclusive rights of distribution with respect to the Debtor's LOGIX technology on certain computers and/or computer series of specified manufacturers (e.g., Wang, Fortune Systems, Xerox, Apple and certain IBM series), as well as non-exclusive rights on computers or computer series of other specified manufacturers. Of the 12 licenses and approximately 5000 sublicenses issued on the Debtor's products, ITI possesses the only exclusive license by virtue of the Agreement. The Agreement, which purports to be non-terminable, expires on January 1, 2082, unless otherwise terminated by agreement of the parties.

As provided in the Agreement, ITI paid the Debtor $304,375 in pre-paid license fees. The Agreement further provides that ITI is to pay license fees to the Debtor

on the basis of percentages of certain revenues received by ITI from licensing LOGIX or software incorporating LOGIX. Under the Agreement, ITI received a copy of the LOGIX source code. The terms of the Agreement allow ITI to modify that code and market the resulting program under the name LOGIX or another name.

ITI, in fact, modified some of the LOGIX source code, wrote additional source code and marketed the resulting software to its customers under the name RUBIX. Since 1985, the development and marketing of RUBIX has provided ITI with 100% of its earnings. Indeed, ITI completely changed its business orientation from consulting and systems development to product development in reliance on the LOGIX license.

The Debtor's relationship with ITI has been marked by discord from its inception, however. The Debtor describes the relationship as resulting in "numerous and continuous disputes and protracted and costly litigation, the burdens of which were a precipitating cause of the instant Chapter 11 case." ITI concurs, describing the relationship as "contentious and problematical." The Agreement itself was entered as part of a settlement of disputes between the parties. Furthermore, the Debtor's Schedules and Statement of Financial Affairs reveal that ITI sued the Debtor in the United States District Court for the District of Maryland with respect to its distribution rights and recovered a judgment in excess of 17 million dollars. Likewise, the Debtor sued ITI in the United States District Court for the District of Massachusetts for business torts, breach of contract and trademark infringement, seeking approximately 5.5 million dollars. The Debtor recovered a judgment against ITI in that suit. Both cases are on appeal. As a consequence, it is not surprising that the parties are now unable to reach an agreement as to the amount of royalties owed by ITI to the Debtor.

During the period between January 1, 1982 and December 31, 1985, ITI asserts that it paid the Debtor a total of approximately $450,000 pursuant to the Agree-

ment. Accordingly, ITI contends that its payments to the Debtor average $10,000 per month. The Debtor, predictably, views that figure as exaggerated, suggesting that it is comprised not only of royalties but also consulting fees, interest on late payments and the like and that the amount of royalties in fact paid by ITI average $2,654 per month. The Debtor also points out that ITI has only tendered a single payment of $39.50 for post-petition royalties in all of 1986, based upon revenues the Debtor claims to be grossly understated. Moreover, the Debtor states that it must constantly demand accountings and payments of royalties from ITI and that ITI has asserted setoffs with respect to both pre-petition and post-petition claims it has against the Debtor.

In view of its troublesome relationship with ITI, and its inability to effectuate a compromise acceptable to both parties, the Debtor, on July 7, 1986, moved for authority to reject its executory contract with ITI. In support of its motion, the Debtor indicates that its management and board of directors, in the exercise of their sound business judgment, concluded that rejection of the Agreement with ITI was in the best interests of the Debtor, its creditors and the bankruptcy estate. The Debtor also notes in its motion that ITI's exclusive rights with respect to LOGIX and its assertion of rights with respect to Softshell have adversely affected its ability to negotiate with third parties for sales of rights in LOGIX or for license or distribution arrangements on more favorable or profitable terms than those contained in the Agreement.

In its objection to the Debtor's motion, ITI emphasizes the detriment to the estate and to creditors that would stem from rejection and the likely destruction of its own business. Specifically, ITI juxtaposes the Debtor's income stream from the Agreement ($10,000 per month) with its claim against the estate in the event that the Agreement is permitted to be rejected. ITI estimates that its claim against the estate, based upon damages for lost profits, cus-

tomer claims and going concern value, would be between $14.4 million and $62.5 million. According to ITI, such a claim would reduce the dividend payable to other creditors to miniscule proportions. Moreover, ITI maintains that the burdens imposed on the Debtor by the Agreement are insignificant in comparison to the benefits and stresses the fact that the Debtor has only one employee to handle the entirety of its affairs, thereby allegedly precluding it from securing an alternative licensee for LOGIX. ITI concludes that the Debtor's decision to reject the Agreement clearly evidences flawed business judgment.

## CONCLUSIONS OF LAW

Section 365(a) of the Bankruptcy Code provides: "[e]xcept as provided in sections 765 and 766 of this title and subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Courts have interpreted section 365 to require a two step inquiry: "first, whether the contract is executory; next, if so, whether its rejection would be advantageous to the bankrupt." *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1045 (4th Cir.1985) *cert. denied*, —— U.S. ——, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *In re Laser Disc Computer Systems, Inc.*, No. 85–00535–L, slip op. at 2 (Bankr.D.Mass. October 8, 1985). Since the parties do not dispute the fact that the Agreement is executory, the only issue before the Court is whether its rejection would be advantageous to the Debtor.

The Fourth Circuit has advised courts addressing this issue that they "must start with the proposition that the bankrupt's decision ... is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors." *Lubrizol*, 756 F.2d at 1046, *citing NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482

(1984); *Group of Institutional Investors v. Chicago, Milwaukee, St Paul & Pacific Railroad Co.*, 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959 (1943); *Control Data Corp. v. Zelman (In re Minges)*, 602 F.2d 38 (2nd Cir.1979); *Carey v. Mobile Oil Corp. (In re Tilco, Inc.)*, 558 F.2d 1369 (10th Cir.1977). The business judgment rule, as generally formulated and applied in corporate litigation, states that "courts should defer to— should not interfere with—decisions of corporate directors upon matters entrusted to their business judgment except upon a finding of bad faith or gross abuse of their 'business discretion.'" *Lubrizol*, 756 F.2d at 1047. In short, in the bankruptcy context, the debtor's decision to reject an executory contract should be accepted by the court unless it is shown to be "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Id.*

In this case, the Debtor has determined that rejection of the Agreement is in its best interests and those of its creditors. In view of the troubled relationship between the Debtor and ITI and the likelihood of continuing legal battles between them, the Court finds that the Debtor's decision to reject the Agreement was not so manifestly unreasonable as to suggest bad faith, whim or caprice. Indeed, given the absence of any meaningful income in 1986 from the Agreement and the apparently irreconcilable differences between the parties with respect to the amount of royalty payments due, rejection of the Agreement would appear to be the only way for the Debtor to extricate itself from a seemingly endless round of disputes and to obtain much needed revenues to fund a plan of reorganization.

ITI, as did the party opposing rejection of its contract in *In re Laser Disc Computer Systems, Inc.*, cites *In re Petur U.S.A. Instrument Co., Inc.*, 35 B.R. 561 (Bankr. W.D.Wash.1983). In that case, the debtor, which marketed geotechnical instruments invented by one of its principals, sought to reject a 20 year licensing agreement with a closely held company formed solely for the purpose of marketing the debtor's products in Canada. As in the instant case, the

relationship between the parties was marked by discord. The court, in reviewing the debtor's decision to reject its contract with the Canadian company concluded that the debtor had "properly exercised its business judgment and that rejection could well create additional profits and aid in reorganization." 35 B.R. at 563. Nevertheless, the court refused to authorize the debtor's rejection of the licensing agreement because it found that granting the motion would result in the destruction of the non-debtor licensee and that damage to the licensee would be grossly disproportionate to any benefit derived by general creditors. The court based its decision on the presences of five factors: 1) lack of evidence that the debtor could reorganize even if allowed to reject the executory contract; 2) the passing of 120 days since the filing of the Chapter 11 without a plan being proposed by the debtor; 3) speculative profits envisioned by the debtor; 4) lack of evidence of new capital investment in the debtor; and 5) the fact that the non-debtor licensee was a profitable and on-going business.

Both the Fourth Circuit Court of Appeals in *Lubrizol* and the Bankruptcy Court for the District of Massachusetts per Judge Lawless in *In re Laser Disc Computer Systems, Inc.* rejected the *Petur Instrument* decision, finding it doubtful that the Bankruptcy Code permits such a "balancing of equities." As the *Lubrizol* court stated:

> It cannot be gainsaid that allowing rejection of such contracts as executory imposes serious burdens upon contracting parties such as Lubrizol. Nor can it be doubted that allowing rejection in this and comparable cases could have a general chilling effect upon the willingness of such parties to contract at all with businesses in possible financial difficulty. But under bankruptcy law such equitable considerations may not be indulged by courts in respect of the type of contract here in issue. Congress has plainly provided for the rejection of executory contracts, notwithstanding the obvious adverse consequences for contracting parties thereby made inevitable. Awareness

by Congress of those consequences is indeed specifically reflected in the special treatment accorded to union members under collective bargaining contracts, and to lessees of real property. But no comparable special treatment is provided for technology licensees such as Lubrizol. They share the general hazards created by § 365 for all business entities dealing with potential bankrupts in the respects at issue here.

*Lubrizol,* 756 F.2d at 1048 (citations omitted). This Court finds that reasoning persuasive.

While ITI notes that that Debtor has not filed a plan of reorganization and emphasizes the Debtor's limited staff and ability to market its software, while at the same time touting its own success, the Court finds that these considerations, even if they were not subject to some doubt, are simply not relevant. The Debtor's decision to reject its contract with ITI was in accordance with its sound business judgment. Thus, the Debtor's Motion for Authority to Reject Executory Contract is allowed.