In re TACOMA BOATBUILDING COMPANY, Debtor.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, individually and as agent for the Bank of California, N.A.; Canadian Imperial Bank of Commerce; the Bank of California, N.A.; and Canadian Imperial Bank of Commerce, Plaintiffs,

v.

TACOMA BOATBUILDING COMPANY, debtor, At–Sea Incineration; the United States of America, represented by the Secretary of Transportation by and through the Maritime Administration; and the National Bank of Washington, Indenture Trustee, Defendants.

Bankruptcy No. 85 B 11535 (BRL).
Adv. No. 85–6704A.

United States Bankruptcy Court,
S.D. New York.

July 25, 1991.

Fried, Frank, Harris, Shriver & Jacobson, P.C., New York City by Cory Mitchell Gray, for plaintiffs.

The U.S. Dept. of Justice, Washington, D.C., by Scott Williams, for defendants.

The U.S. Dept. of Transp., The Maritime Admin. by Richard Lorr, Washington, D.C., for defendants.

## DECISION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

BURTON R. LIFLAND, Chief Judge.

### I. INTRODUCTION

On September 23, 1985, Tacoma Boatbuilding Company ("Tacoma" or "Debtor"), a Washington based ship manufacturer, filed a petition for reorganization under

Chapter 11 of Title 11 of the United States Code (the "Code"). Tacoma became a debtor in possession under Sections 1107 and 1108 of the Code, and its First Amended and Restated Plan of Reorganization (the "Plan") was confirmed on August 17, 1987.[1]

On November 1, 1985, an adversary proceeding was commenced by the filing of a Complaint by the Banks seeking, *inter alia,* a declaration that the Banks' security interest in the Apollo One and Apollo Two incineration ships under construction by Tacoma primed the security interests of At-Sea Incineration, Inc. ("ASI"), and its successor, the Maritime Administration of the United States ("MarAd"). In February 1987, the Banks moved for summary judgment and MarAd cross-moved for summary judgment. One month after the filing of its cross-motion, MarAd filed a motion to amend its Answer to assert that, as a buyer in the ordinary course of business ("BIOC") as defined by Section 1-201(9) of the Uniform Commercial Code ("UCC"), MarAd's interest primed the Banks' security interest under UCC § 9-307(1).

On December 31, 1987, this Court issued a decision denying MarAd's motion to amend its Answer and granting summary judgment to the Banks. *In re Tacoma Boatbuilding Company,* 81 B.R. 248 (Bankr.S.D.N.Y.1987). MarAd appealed and ultimately was granted leave to amend in order to assert its additional BIOC defense. *Maritime Administration v. Continental Illinois National Bank and Trust Company of Chicago,* 889 F.2d 1248 (2d Cir.1989).

Subsequently, the Banks renewed their motion for summary judgment under Bankruptcy Rule 7056 and Rule 56 of the Federal Rules of Civil Procedure, and MarAd filed the instant cross-motion for summary judgment, asserting its BIOC defense.

## II. JURISDICTION

This adversary proceeding requires the Court to determine the priority of the competing liens on the debtor's property in view of the BIOC defense raised by MarAd. Under 28 U.S.C. § 157(b)(1), (b)(2)(K) and (O) this is a core proceeding subject to the jurisdiction of the bankruptcy court.

## III. FACTUAL BACKGROUND

On September 23, 1985, Tacoma filed a petition for relief under Chapter 11 of Title 11 of the Code. Previously, on September 17, 1980, Tacoma entered into a Security Agreement with the Banks granting them a security interest in its inventory. The Banks perfected their security interest on September 18, 1980. On December 29, 1981, Tacoma and the Apollo Company, L.P. ("Apollo") entered into two construction contracts (the "Contracts") for the construction and sale of two incineration vessels, Apollo One and Apollo Two (collectively, the "Vessels"). Tacoma granted Apollo a security interest in the Vessels, which Apollo perfected on October 20, 1982. On October 26, 1982, MarAd entered into a Commitment to Guarantee Obligations (the "Guarantee") and a Security Agreement (the "Security Agreement") with Apollo. Under the Guarantee, Apollo was obligated to pay MarAd any sums it advanced under the Guarantee. On January 18, 1985, Apollo assigned its right, title and interest in and to the Contracts to ASI, and its obligations to MarAd under the Guarantee and the Security Agreement. ASI failed to meet its obligation to MarAd under the Guarantee, and thus MarAd became subrogated to ASI's rights under the Guarantee and became its assignee under the Security Agreement.

Construction on the Vessels stopped in September, 1985, when one Vessel was 95% complete, and the other was 70% complete, and a substantial portion of the payments on both Vessels had been made. Under the terms of the Contracts, the Vessels were never delivered. *Tacoma* at 253. On September 29, 1986, Tacoma filed a motion seeking to reject the Contracts pursuant to

---

**1.** The issues determined herein were the subject of prior motion practice and appellate review. See *In re Tacoma Boatbuilding Company,* 81 B.R. 248 (Bankr.S.D.N.Y.1987); *Maritime Administration v. Continental Illinois National Bank and Trust Company of Chicago,* 889 F.2d 1248 (2d Cir.1989) for a more comprehensive discussion and background.

Section 365 of the Code. MarAd did not oppose this motion. On November 3, 1986, this Court entered an Order authorizing the rejection of the Contracts (the "Rejection Order"). On November 23, 1988, the sale of the Apollo Two was approved, and on February 9, 1989, the sale of the Apollo One was approved. The proceeds of the sales, totalling $7,200,000, are in escrow pending the resolution of this dispute.

On November 1, 1985, the Banks filed a complaint with this Court seeking a declaratory judgment that its security interest has priority over MarAd's security interest. On February 11, 1987, the Banks filed the first motion for summary judgment in this proceeding. On March 25, 1987, MarAd filed a cross-motion for summary judgment. One month after the cross-motions for summary judgment in the prior action had been submitted, MarAd moved to amend its Answer to include a defense that it was a BIOC under the UCC, and thus not subject to the Banks' prior lien. MarAd's motion to amend was denied. On December 31, 1987, this Court decided the cross-motions, finding, *inter alia*, that:

> The Banks' [sic] have a "first in time" perfected security interest in the Vessels, which primes MarAd's security interest.... *Tacoma* at 263.

and also that:

> MarAd's assertion of "buyer in the ordinary course" status [is] an affirmative defense [that] MarAd is barred from raising. *Id.* at 261.

MarAd appealed. The decision was affirmed by the District Court without opinion. MarAd, seeking to add the BIOC defense, again appealed, and on November 16, 1989, the Court of Appeals reversed and remanded, with instructions to the Bankruptcy Court to:

2. The Court of Appeals addressed only two issues: (1) whether MarAd's BIOC defense was an affirmative defense, and if so, (2) whether it should have been granted leave to amend its answer in order to plead that defense. *Maritime Administration* at 1253.

3. The Banks have a perfected lien against the inventory of Tacoma, which this Court has held in its prior opinion primes MarAd's security interest. MarAd asserts that the Banks' lien, by

grant MarAd's motion for leave to amend its answer to assert the "buyer in the ordinary course of business" defense. *Maritime Administration* at 1256.

No other issue was addressed on appeal,[2] and only the holding as to the denial of MarAd's motion to amend its Answer was reversed.

On March 26, 1991, the Banks refiled their motion for summary judgment, and on June 12, 1991, MarAd filed a cross-motion for summary judgment based on the defense of "buyer in the ordinary course".

## IV. DISCUSSION: MARAD'S "BUYER IN THE ORDINARY COURSE OF BUSINESS" DEFENSE

In accordance with the decision of the Court of Appeals, this Court now entertains the instant motion and cross-motion for summary judgment in light of MarAd's affirmative defense of BIOC under the UCC.

### A. Narrow Scope of the Issues Now Presented

Under the doctrine of the law of the case, a court decision "should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983), cited in *In re PCH Associates,* 122 B.R. 7 (S.D.N.Y.1990) at 9. This Court's decision in *Tacoma* has been reversed only in the narrow area of its holding with regard to MarAd's right to amend its Answer to include the affirmative defense of BIOC under the UCC. Thus, all other holdings in *Tacoma* stand, and the only issue to be decided here is whether MarAd can prevail over the Banks' security interest as a BIOC.[3]

its own agreement with Tacoma, does not attach to inventory which is sold in the ordinary course of business. Thus, under UCC § 9–306(2), if the Vessels were the subject of a completed sale, the lien that the Banks had would no longer attach to those goods. MarAd then asserts that the sale of the Vessels was completed under a theory that Apollo, or its assignees or successors in interest (ultimately MarAd), were "buyers in the ordinary course of business" un-

This Court has already held that the Banks have a prior security interest in the Vessels. *Tacoma* at 263. MarAd asserts that, because this prior lien is a lien on inventory, if a completed sale of the Vessels in fact took place, that prior lien would no longer attach to the Vessels. MarAd further asserts that such a sale was completed in accordance with the Contracts under the theory of BIOC. If we were to consider the substantive issue of whether, in accordance with the Contracts, MarAd qualifies as a BIOC under the UCC, a number of issues would arise as footnoted in our prior decision (See *Tacoma*, n. 21 at 258, fn. 3 above and discussion below). However, MarAd's entire defense of BIOC rests on its rights under the Contracts. Before we can examine the UCC standards that must be met, we must address a prior issue: Can MarAd successfully raise any defense at all based on its rights under the Contracts?

### B. *Implications of the Rejection Order*

MarAd's BIOC defense is based on its assertion that it is a buyer under the Contracts, and that a completed sale has taken place. However, it is undisputed that, on November 3, 1986, pursuant to an unopposed motion by Tacoma to reject the Contracts, this Court determined that the Contracts were executory (*i.e.,* that they were not fully performed) and issued the Rejection Order. That order is final and non-appealable. Thus, as a matter of law, the Contracts were not completed, title did not pass under the Contracts, and no completed sale took place. MarAd's BIOC defense essentially maintains that there is constructive completion of the Contracts. By asserting this defense, MarAd asserts its rights to a completion of the incomplete sale under the Contracts.

---

der UCC § 9–307(1). If MarAd could establish that the sale was completed under the Contracts, and that it was a BIOC, then, if the prior lien was indeed released under UCC § 9–306(2), MarAd's security interest would be the only lien on the Vessels. In order to establish that it is a BIOC, MarAd would have to establish, *inter alia,* that a "sale" took place for purposes of determining BIOC status, either by establishing that

As noted previously in the prior opinion, *Tacoma,* n. 21 at 258, it is a matter of settled law that a party to a rejected contract retains only the right to sue for damages for breach under Section 365(g) of the Code. *Lubrizol Enterprises v. Richmond Metal Finishers,* 756 F.2d 1043, 1048 (4th Cir.1985). See also, *Leasing Service Corporation v. First Tennessee Bank National Association,* 826 F.2d 434, 436 (6th Cir. 1987). Thus, as a matter of law, MarAd is estopped from raising any of the issues which this Court would have to consider in a determination of its status as BIOC, because every aspect of being a BIOC involves the contract rights of a buyer under the Contracts, and MarAd is estopped from asserting any of those rights save the remedy of damages.

### V. SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules"), as adopted in bankruptcy proceedings under Bankruptcy Rule 7056, summary judgment must be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Federal Rule 56(c). It is designed to "facilitate the expeditious administration of justice, allowing the court to smoke out those cases not requiring trial." *Tacoma* at 261, citing *S.E.C. v. Research Automation Corp.,* 585 F.2d 31 (2d Cir.1978). Thus, "only dispute over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the instant adversary proceeding, MarAd has been granted only the right to assert its affirmative defense of BIOC. This Court has already held that MarAd's

---

title passed under UCC § 2–401, or that the goods could be identified to the contract under UCC § 2–501. In addition, it would have to show that Tacoma was in the business of selling "goods of [the same] kind" as the Vessels under UCC § 1–201(9), that MarAd met the "good faith" requirements under UCC § 1–201(9), and that, even though MarAd was a successor in interest, it was still entitled to BIOC status.

security interest does not have priority over the Banks' security interest. All other defenses have already been denied. This Court now holds that MarAd's defense of BIOC also fails as a matter of law, because, as a party to the rejected Contracts, it is estopped from asserting the necessary contract rights under those Contracts that it would have to assert to establish a successful defense. Distribution with respect to MarAd's claims for damages are governed by the terms of the confirmed reorganization plan.

Accordingly, it is hereby found and determined that, for all the reasons set forth herein, the Banks' motion for summary judgment is granted, and MarAd's cross-motion for summary judgment is denied.

SUBMIT AN ORDER in accordance with the foregoing.