**In re US AIRWAYS GROUP, INC., et al., Debtors.**

Nos. 02–83984–SSM to 02–83991–SSM.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Oct. 2, 2002.

John Wm. Butler, Jr., Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, Lawrence E. Rifken, McGuireWoods, LLP, McLean, VA, for debtors in possession.

Robin Spigel, Willkie Farr & Gallagher, New York City, Linda Lemmon Najjoum, Hunton & Williams, McLean, VA, for MetLife Capital, L.P.

Michael Luskin, Luskin, Stern & Eisler LLP, New York City, Paula S. Beran, Tavenner & Beran, PLC, Richmond, VA, for Mitsui Banking Corp.

Scott L. Hazan, Otterbourg, Steindler, Houston & Rosen, P.C., New York City, Malcolm Mitchell, Vorys, Sater, Seymour & Pease, L.L.P., Alexandria, VA, for Official Committee of Unsecured Creditors.

Dennis Early, Alexandria, VA, Assistant United States Trustee.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

A hearing was held in open court on September 26, 2002, on the third motion (Doc. # 417) filed by the debtors-in-possession on September 6, 2002, to reject an unspecified number of aircraft and engine leases and to abandon an unspecified number of encumbered aircraft and engines out of a pool of something over a hundred aircraft. Eighteen objections were filed by various financing entities. All but two of these were resolved by consent prior to the hearing. The remaining objections are those of Sumitomo Mitsui Banking Corporation (Doc. # 529)[1] and MetLife Capital, L.P. (Doc. # 595 and 607).[2] For the reasons stated, the court will overrule the objections and will grant the requested relief, but in a form slightly different than requested by the debtors in possession.

### Background

US Airways Group, Inc., and seven of its subsidiaries and affiliates[3] filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code in this court on August 11, 2002. They continue in operation of their business and possession of their estates as debtors in possession. US Airways represents that it is the seventh largest airline in the United States, and states that during 2001 it carried approximately 56 million passengers and generated operating revenues of $8.3 billion.

At the inception of the case, an order was entered allowing the debtors in possession to abandon (or reject leases with respect to) 57 specified aircraft and associ-

1. Sumitomo Mitsui represents that it is the lender with respect to two encumbered aircraft which, on the exhibits attached to the motion, are listed under Wilmington Trust Company, as Indenture Trustee.

2. MetLife is the lessor with respect to seven aircraft leased to Piedmont Airlines, Inc., one of the debtors in these jointly-administered cases.

3. The subsidiaries and affiliates are U.S. Airways, Inc., Allegheny Airlines, Inc., PSA Airlines, Inc., Piedmont Airlines, Inc., MidAtlantic Airways, Inc., U.S. Airways Leasing and Sales, Inc. and Material Services Company, Inc.

ated engines, all of which were stored in the desert and were not being used. A subsequent order gave the debtors authority to abandon (or reject leases with respect to) 10 additional aircraft and their associated engines. The present motion now seeks authority to do the same with respect to a not-yet-determined portion of an "pool" of more than 100 aircraft which the debtors' financial advisors have identified as potential "dogs." The debtors concede, however, that they do not intend to abandon or reject all of the aircraft in the pool. Basically, they seek authority, without further hearing or order of this court, to simply designate which aircraft in the pool will be abandoned or rejected. Their strategy is to attempt to renegotiate the terms of those loans and leases which they feel are financially burdensome and, at the end of the day, to retain only those aircraft in the pool that are needed for continued operations and are the least burdensome.

### Discussion

### A.

A trustee or debtor in possession may, after notice and a hearing, abandon any property of the estate "that is burdensome to the estate or that is of inconsequential value and benefit to the estate." § 554(a), Bankruptcy Code. Similarly, a trustee or debtor in possession may, subject to the court's approval, assume reject any unexpired lease to which the debtor is a party. § 365(a), Bankruptcy Code.

The objections before the court have two themes. The first is that until the debtors actually identify which specific aircraft in the pool they have decided to abandon or reject, the present motion is premature. The second is that the debtors should not be permitted to abandon or reject without complying with requirements in the underlying loan or lease agreements to return the aircraft and engines to a place designated by the lender or lessor, to reinstall any original engines that are not currently on the aircraft, and to provide all manuals, logs, certifications, and documentation.

### B.

The standard in this Circuit for approving a request to reject an unexpired lease is whether the trustee or debtor in possession has exercised sound business judgment. *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir.1985) ("the bankrupt's decision [to reject] ... is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors"). An unexpired lease is fundamentally an asset coupled with a liability: to obtain the benefit, the trustee or debtor in possession must perform all the obligations. Where the burden outweighs the benefit, the trustee or debtor in possession is allowed to reject the lease so as not to saddle the bankruptcy estate with an unwarranted expense.[4] A similar standard would apply to approval of a request to abandon encumbered property. If the debt exceeds the value of the encumbered property, there would ordinarily be no benefit to the estate, and the court's review would be limited to ensuring that the trustee or debtor in possession

---

4. Rejection, to be sure, is not cost-free to the estate. Rejection of an executory contract or unexpired lease constitutes a breach, which may give rise to a claim for damages. § 365(g), Bankruptcy Code. The breach, however, is treated as having occurred prepetition. § 365(g)(1), Bankruptcy Code. Since prepetition claims in bankruptcy are often paid at less than 100 cents on the dollar, the trustee or debtor in possession will often be better off paying the damage claim rather than performing the obligations under the lease.

was not short-changing the estate by disposing of property that actually had some value.

■ As a conceptual matter, there is obviously no way by which the court can make a meaningful determination whether the debtors in possession have exercised sound business judgment in seeking to abandon a particular encumbered aircraft or to reject a particular unexpired aircraft lease when the debtor has not yet selected which aircraft are to be abandoned and which leases are to be rejected. Furthermore, to simply give a trustee or debtor in possession carte blanche to make that determination itself would be to abdicate the court's essential supervisory role over the reorganization process.

In this case, however, there is another factor at play. What the debtors really seek is a kind of "fast track" authority that will let them effectuate abandonment or rejection prior to what they see as a looming deadline that could arguably make abandonment or rejection more expensive. Specifically, the automatic stay with respect to aircraft mortgages and leases terminates unless, before the date that is 60 days after the filing of the petition, the trustee or debtor in possession "agrees to perform" all obligations of the debtor under the security agreement or lease and cures any defaults. § 1110(a)(2), Bankruptcy Code. Additionally, the statute requires the trustee or debtor in possession "to immediately surrender *and return*" the aircraft if the lender or secured party "becomes entitled ... to take possession" because .of the termination of the stay. § 1110(c)(1), Bankruptcy Code (emphasis added). The debtors are concerned that the statute could be read in such a way that the estate would be required to shoul-

der, as an administrative expense, the costs of actually returning the aircraft (which might, for example, include the cost of reinstalling original engines where those engines had been removed for repair or overhaul) to the lenders or lessors, or to pay, as an administrative expense, the lenders' or lessors' costs of retrieving their aircraft and making them airworthy.

Whether this potential liability for administrative expenses would actually depend on whether the rejection or abandonment occurs prior to running of the 60–day period is an intriguing question, but one which the court need not decide at this time.[5] It is sufficient for the purpose of the present motion that the debtors' liability for administrative expenses *may* depend on the timing of rejection or abandonment. In the present case, the 60th day after the filing of the chapter 11 petition is October 10, 2002, so time is obviously short.

The debtors seek to have rejection or abandonment effective as to particular aircraft or engines simply by giving notice to the affected lender or lessor without further court review. The question is how to accommodate the debtors' desire (and possibly need) to effectuate rejection or abandonment prior to the running of the 60–day period without bogging the process down by requiring notice and a (possibly expedited) hearing as each aircraft is identified, while at the same time not abdicating the court's statutory obligation to review the merits of abandonment or rejection if appropriate objection is made. Having considered the matter, the court will allow abandonment or rejection to be "effective" three business days after the giving of notice, as the debtors have re-

---

5. The proposed form of order submitted by the debtors expressly preserves the rights of the debtors, on the one hand, and the lenders and lessors, on the other, to argue their respective positions at an appropriate time.

quested, but subject to the right of the creditors committee or the affected lender or lessor to file an objection within 10 days of the effective date and to notice the objection for a hearing. Unless the objection is sustained, however, the effective date of abandonment or rejection will remain unchanged. In not affirmatively requiring, as a condition of abandonment or rejection, that the debtors comply with contractual requirements related to return of collateral, the court neither excuses such non-compliance nor forecloses any claim the lender or lessor might assert arising from such non-compliance.

## C.

A separate order will be entered consistent with this opinion.[6]

### ORDER AUTHORIZING DEBTORS IN POSSESSION TO REJECT CERTAIN AIRCRAFT AND ENGINE LEASES AND TO ABANDON CERTAIN AIRCRAFT AND ENGINES

Upon consideration of the Third Motion for Order Authorizing the Debtors to (A) Reject Certain Aircraft and Engine Leases Pursuant to Section 365 of the Bankruptcy Code and (B) Abandon Certain Aircraft and Engines Pursuant to Section 554 of the Bankruptcy Code (Doc. # 417), and for the reasons stated in the memorandum opinion filed with this order, it is

**ORDERED:**

1. The motion is GRANTED to the extent set forth in this order.

2. The Debtors are authorized, but not directed, to reject the Leases with respect to the Selected Aircraft and Engines and abandon the Owned Aircraft and Engines

with respect to the Selected Aircraft and Engines, effective on the date (the "Effective Date") that is the third (3rd) business day after the date on which the Debtors provide written notice of (as applicable) such rejection to the relevant lessors (each a "Lessor," and collectively the "Lessors") of the Leased Aircraft and Engines and such abandonment to the relevant mortgagees (each a "Mortgagee," and collectively the "Mortgagees") of the Owned Aircraft and Engines specifying the identity and location of the aircraft and engines that are the subject of such rejection or abandonment and to the Official Committee of Unsecured Creditors. On the Effective Date, (a) the Debtors shall be deemed to have relinquished possession of the Leased Aircraft and Engines and the Owned Aircraft and Engines to the relevant Lessors and Mortgagees or other party in actual possession of the Leased Aircraft and Engines or the Owned Aircraft and Engines (but not the Debtors as debtors in possession or debtors, and their agents and representatives (it being understood that Avtel Services Inc. shall not be the Debtors' agent as of the Effective Date with respect to the Leased Aircraft and Engines or the Owned Aircraft and Engines to be relinquished)), (b) the right to take possession of the Leased Aircraft and Engines and the Owned Aircraft and Engines (and the documents and records relating thereto) shall be relinquished to the relevant Lessors and Mortgagees, and (c) the automatic stay provided under Section 362 of the Bankruptcy Code shall not apply to (i) such aircraft or engines (or the documents and records relating thereto) or (ii) actions or proceedings taken in connection with the enforcement of rights or remedies with respect to such aircraft or en-

---

**6.** Except for the changes noted in this opinion, the order is otherwise identical with the order tendered by the debtors (as a word processing file on floppy disk) at the hearing on the motion. That order incorporates additional terms that the debtors had agreed to in resolving objections filed by the parties other than Sumitomo Mitsui and MetLife.

gines, including the giving of notices of default, acceleration, demand, or disposition of collateral.

3. Within ten days of the Effective Date of any such abandonment or rejection, the affected Lessee or Mortgagee or the Official Committee of Unsecured Creditors may file with the court, and serve on the debtors, the United States Trustee, and (if the objection is not by the Committee) on the Official Committee of Unsecured Creditors, an objection and notice of hearing, which shall be set for hearing on the next scheduled omnibus hearing date that provides not less than ten days' notice. The filing of such objection shall not serve to stay or otherwise modify the effective date of such abandonment or rejection unless, at the hearing on the objection, the court so orders.

4. The Debtors agree to make the records and documents relating to Selected Aircraft and Engines available to the relevant Lessor or Mortgagee on or before the date that is twenty (20) business days following the Effective Date.

5. Upon written request from an affected Mortgagee or Lessor with respect to Selected Aircraft and Engines, the Debtors agree to provide such Mortgagee or Lessor with a bill of sale or a lease termination document, as appropriate, to file with the Federal Aviation Administration in connection with such Selected Aircraft and Engines; *provided, however,* that the affected Mortgagee or Lessor shall be solely responsible for all costs associated with such bill of sale or lease termination document, if any.

6. The Debtors further agree to prepay insurance with respect to Selected Aircraft and Engines and to keep Selected Aircraft and Engines on the Debtors' FAA–Approved maintenance program for the period between the Effective Date and the date upon which the Lessor or Mortgagee retrieves the Aircraft and Engines; provided, however, that such period shall not exceed twenty (20) days; and further provided that such right is without prejudice to the Debtors' rights to seek to setoff such expenses against any claim or administrative claim that the affected Lessor or Mortgagee may assert against the Debtors.

7. Nothing in this Order (including the Effective Date) shall bar any Lessor or Mortgagee from asserting claims, if any, for damages or other relief against the Debtors, whether as a general unsecured claim or a claim entitled to administrative priority treatment or otherwise ("Claims") including, without limitation, any Claims for actions taken by the Debtors that are inconsistent with the terms hereof, Claims relating to charges associated with return condition, the removal, transport or installation of engines or any postpetition damage to, or loss of, engines, and legal and equitable claims relating to the nonperformance of certain surrender and return conditions whether under the aircraft credit documents or under section 1110(c)(1) of the Bankruptcy Code, subject to any and all defenses, setoffs, counterclaims, and other objections of the Debtors and any other party-in-interest.

8. Notwithstanding any provision of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Local Rules of this Court to the contrary, this Order shall take effect immediately upon entry of this Order.

9. The holder of any claim arising from any rejection and/or abandonment authorized herein shall be required to file a proof of claim on account of such claim against the Debtors on or before the later

of (a) the General Bar Date [1] or (b) sixty (60) days after the effective date of such rejection and/or abandonment.

---

**1.** On September 5, 2002, the Court entered an order setting November 4, 2002 as the deadline for non-governmental entities to file proofs of claims in these cases.