BYE, Circuit Judge, with whom SMITH and KELLY, Circuit Judges, join,
concurring in part and dissenting in part.
I agree the appeal is not moot. Because I disagree with the majority’s conclusion IBC has substantially performed its obligations under the integrated agreement, however, I respectfully dissent from the majority’s ultimate conclusion the agreement is not executory. In my view, both IBC and LBB have ongoing obligations under the integrated agreement which would result in material breaches if not performed. Accordingly, I conclude the *965 integrated agreement is executory and would affirm.
Such disagreement with the majority results from my view that the license is of primary importance to the integrated agreement, as are the attendant ongoing obligations under the License Agreement. The majority assumes the license, as a single asset among many, plays a relatively minor role in the integrated agreement, the essence of which the majority suggests was the sale of IBC’s bread businesses in the pertinent territories. The majority then reasons the ongoing obligations associated with only this single asset are relatively minor when considered in context of the sale contemplated by the entire agreement.
This is not a case, however, where merely counting the number of assets transferred conveys the full picture. Limiting our analysis so would lead us to conclude a failure to transfer the license would have been less material to the parties than a failure to transfer some other category of assets, the trays used in IBC’s Chicago business for example, merely because there were multiple trays and only one license. Our analysis in this case has to also consider the relative importance of the license to the integrated agreement.
As I view it, the majority fails to acknowledge the importance of the license because it fails to first acknowledge the full purpose of the parties in entering into the integrated agreement. The materiality of a contractual obligation depends on whether the obligation goes to the essence of the contract. See 15 Richard A. Lord, Williston on Contracts § 44:55 (4th ed.2000). It follows that the relative importance of a particular asset and the obligations associated with such asset must also be assessed with respect to the essence of the contract. The purpose of LBB and IBC in entering into the integrated agreement here was the sale of IBC’s bread business in the pertinent territories “to comply with the Final Judgment entered in the” antitrust dispute (“antitrust Final Judgment”). Appellants’ Addendum A.26. The terms of the antitrust Final Judgment directed IBC to divest itself of the tangible assets reasonably necessary to allow the purchaser to make effective ongoing use of the license which IBC had agreed to divest. United States v. Interstate Bakeries Corp. & Cont’l Baking Co., No. 95-C-4194, 1995 WL 803559 at *3 (N.D.Ill. Aug. 7, 1995). In other words, the multitude of tangible assets listed in the Asset Purchase Agreement were there for the purpose of allowing LBB to make effective ongoing use of the license. Given the central character of the transfer of the license to the antitrust Final Judgment and the integrated agreement, the mere fact the license was one asset listed among many does not indicate it plays a minor role in the transaction.
Even if the parties had not drafted their agreements against the background of the antitrust Final Judgment, I would arrive at the same conclusion. The provisions of the Asset Purchase Agreement and License Agreement indicate the parties regarded the ongoing obligations associated with the license as more likely to be material than those regarding the asset purchase. To illustrate, the severability provision in the Asset Purchase Agreement indicates that, in the event a provision of such agreement would be declared invalid, the parties agreed the provision would be severable and they would continue to be bound by the remaining valid provisions. By contrast, the severability provision of the License Agreement indicates that, in the event any provision of the License Agreement would be declared invalid, either party could request renegotiation of the License Agreement if it deemed the pertinent provision to be material. Indeed, the parties expressly designated one *966 of LBB’s ongoing duties under the License Agreement as material.
For the foregoing reasons, I conclude the license and the attendant ongoing obligations were of primary importance to the parties and their integrated agreement. We must consider the importance of these obligations when we assess whether the parties have substantially performed their obligations to determine whether the contract is executory. See 15 Williston, supra § 44:55 (“Substantial performance is the antithesis of material breach; if it is determined that a breach is material, or goes to the root or essence of the contract, it follows that substantial performance has not been rendered[.]”). IBC and LBB each have continuing obligations under the integrated agreement. We must determine whether any of those ongoing obligations would result in a material breach if not performed. If so, the party who has the ongoing obligation cannot be said to have substantially performed.
There is no question LBB has an ongoing obligation which would result in a material breach if not performed. In section 5.2 of the License Agreement, the parties expressly indicated a failure of LBB to maintain the quality and character of the goods sold under the licensed trademarks would constitute a material breach. Accordingly, LBB cannot be said to have substantially performed.
I also conclude IBC has not substantially performed because IBC has ongoing obligations which would result in a material breach if not performed. For example, because IBC has granted LBB an exclusive license to use the pertinent trademarks in the territories mentioned in the integrated agreement, IBC has a continuing obligation to refrain from marketing its products under those trademarks in those territories. See In re Select-A-Seat Corp., 625 F.2d 290, 292 (9th Cir.1980) (“Because of the exclusive nature of the license which Fénix received, Select-A-Seat was under a continuing obligation not to sell its software packages to other parties.”); see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1045 (4th Cir.1985) (“The unperformed, continuing core obligations of notice and forbearance in licensing made the contract executory as to [the defendant].”). As the purpose of the integrated agreement was to transfer IBC’s bread business in the specified territories to comply with the antitrust Final Judgment, it cannot seriously be argued IBC would not materially breach the integrated agreement if it breached its duty to forbear from using the trademarks in those territories. In addition, IBC has other continuing obligations relating to indemnifying LBB for certain costs and expenses, and maintaining and defending the marks. See In re Qintex Entm’t, Inc., 950 F.2d 1492, 1496 (9th Cir.1991) (concluding a contract was executory where the party had ongoing duties to indemnify and defend); Lubrizol Enters., Inc., 756 F.2d at 1045 (discussing obligations of defending infringement suits and indemnification). In light of its continuing obligations of forbearance regarding the license and its other ongoing duties, IBC cannot be said to have substantially performed its obligations under the integrated agreement.
For the foregoing reasons, I respectfully dissent from section II.B. of the majority opinion.