In re WHEELING–PITTSBURGH
STEEL CORPORATION, et
al., Debtors.

WHEELING–PITTSBURGH STEEL
CORPORATION, et al., Movants,

v.

WEST PENN POWER
COMPANY, Respondent.

Bankruptcy No. 85–793PGH.
Motion No. 86–5290.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 22, 1987.

See also, D.C., 67 B.R. 735, Bkrtcy., 74
B.R. 656.

Gary Philip Nelson, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for debtors.

John H. Riordan, Jr., and C. Andrew McGhee, Rose, Schmidt, Chapman, Duff & Hasley, Pittsburgh, Pa., for West Penn Power Co., respondent.

OPINION

WARREN W. BENTZ, Bankruptcy Judge.

*Case Summary*

The debtor requests summary judgment on its Motion to reject an electrical supply contract with West Penn Power Company, on the ground that there is no genuine issue as to the only material fact under the business judgment test *viz.* whether rejection of the contract will benefit the estate. West Penn Power Company argues that public utility contracts are special types of executory contracts, the rejection of which requires consideration of additional facts *viz.* the effect of rejection on the public utility, its customers, and the state laws regulating public utilities.

For the reasons discussed below,[1] we hold that the effect of rejection on the public utility, its customers, and the state laws regulating public utilities is not a material fact to be weighed under the busi-

---

1. This Opinion constitutes this court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052 as made applicable to this contested matter by Bankruptcy Rule 9014.

ness judgment test. We further hold that there is no genuine issue as to any fact material under the business judgment test, and that the debtor is entitled to reject its contract with West Penn Power Company as a matter of law. Therefore, we will grant the debtor summary judgment on its motion to reject its contract with West Penn Power Company.

## Facts

Wheeling-Pittsburgh Steel Corporation ("Wheeling-Pittsburgh" or the "debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 16, 1985, and is currently operating as a debtor-in-possession pursuant to § 1108.[2] West Penn Power Company ("West Penn Power") is a public utility regulated by the Pennsylvania Public Utility Commission.

On December 19, 1966, Pittsburgh Steel Corporation, a predecessor of the debtor, entered into a contract (the "Contract") with West Penn Power for the supply of electricity to the debtor's Monessen and Allenport, Pennsylvania steelmaking facilities. The Contract requires West Penn Power to provide electricity to the debtor for an initial ten year period and thereafter until one of the parties gives two years written notice of an intent to terminate the Contract.

Due to the then-existing large demand for electrical power at the Monessen and Allenport facilities, the Contract provided for lower than customary price rates in exchange for a guaranteed minimum rate of consumption. Thus, the debtor agreed to pay a minimum "demand charge" each month, whether or not the minimum amount of electricity was actually used. The demand charges and other charges are set forth in the Contract's accompanying "Rate Schedule 46," a rate schedule specifically designed for large industrial users such as the debtor.

On October 24, 1986, the debtor filed a motion to reject the Contract under § 365. We held a hearing on December 18, 1986, after which the parties submitted briefs and affidavits. Thereafter, the debtor requested summary judgment pursuant to Bankruptcy Rule 7056, made applicable to this contested matter by Bankruptcy Rule 9014.

## Discussion

In determining the propriety of a debtor's decision to reject a prepetition executory contract, the traditional test is the "business judgment" test. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 1195, 79 L.Ed.2d 482 (1984). The business judgment test "requires only that the trustee [or debtor-in-possession] demonstrate that rejection of the executory contract will benefit the estate." *In re Stable Mews Assoc., Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y.1984) (citations omitted). West Penn Power does not dispute that the Contract is an executory contract for purposes of assumption or rejection under § 365, and both parties concede the general applicability of the business judgment test. The instant dispute centers on what facts are material facts for the court to weigh under the business judgment test.

The parties agree that under the business judgment test, a material fact for the debtor to establish is that rejection of the Contract will benefit the estate. The debtor essentially argues that this is the only material fact that it must establish under the business judgment test.

West Penn Power, on the other hand, argues that public utility contracts are special types of executory contracts, the rejection of which deserves a greater degree of judicial scrutiny than that given to ordinary executory contracts under the business judgment test. Therefore, West Penn Power urges us to additionally weigh the hardship that rejection of the *Contract* would cause to itself, its customers, and the enforcement of state laws regulating public utilities. In substance, then, West Penn Power asks us to weigh facts that are not ordinarily weighed under the business judgment test. The debtor has requested summary judgment on the ground that

2. Unless otherwise stated, all citations are to the current Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

West Penn Power's allegations do not create a genuine issue as to any fact material under the business judgment test.

We can grant the debtor summary judgment only if there is no genuine issue as to any material fact and the debtor is entitled to judgment as a matter of law. Bankruptcy Rule 7056. Applying this standard to the dispute before us, the issues are as follows:

1. In determining, under the business judgment test, the propriety of a debtor's decision to reject an executory contract with a public utility, is the hardship that rejection may cause to the public utility, its customers, and the state laws regulating public utilities a material fact to be weighed by the court?

2. If not, is there a genuine issue as to the only remaining material fact *viz.* whether rejection will benefit the estate?

### I. *Material Facts Under the Business Judgment Test*

West Penn Power argues first that rejection of the Contract would result in an unfair benefit to the debtor at the expense of West Penn Power and its customers. Second, West Penn Power argues that the damage and hardship which would be suffered by West Penn Power and its utility customers as a result of rejecting the Contract would be disproportionate to any benefits derived by the estate. And third, West Penn Power argues that rejection of the Contract would contravene and interfere with Pennsylvania's Public Utility laws, to the detriment of West Penn Power's customers. West Penn Power has offered no legal authority for the proposition that public utility contracts should be treated any differently than ordinary executory contracts for purposes of assumption or rejection.

We understand West Penn Power's concerns. However, assuming *arguendo* that West Penn Power's factual allegations are true, they cannot govern the outcome of this dispute.

As discussed below, under the traditional business judgment test, absent any allegation that the debtor's decision to reject is motivated by bad faith or gross mismanagement, the sole focus is the effect of rejection on the debtor's estate. Once the debtor establishes that rejection will benefit the estate, our inquiry ends. The burden that rejection may visit upon other entities is not a material fact to be considered by the court under the business judgment test. As succinctly stated by the Court of Appeals for the Fourth Circuit:

> It cannot be gainsaid that allowing rejection of such contracts as executory imposes serious burdens upon contracting parties such as Lubrizol. Nor can it be doubted that allowing rejection in this and comparable cases could have a general chilling effect upon the willingness of such parties to contract at all with businesses in possible financial difficulty. But under bankruptcy law such equitable considerations may not be indulged by courts in respect of the type of contract here in issue. Congress has plainly provided for the rejection of executory contracts, notwithstanding the obvious adverse consequences for contracting parties thereby made inevitable. Awareness by Congress of those consequences is indeed specifically reflected in the special treatment accorded to union members under collective bargaining contracts, *see Bildisco*, 465 U.S. at 519–27, 104 S.Ct. at 1193–96, and to lessees of real property, *see* 11 U.S.C. § 365(h). But no comparable special treatment is provided for technology licensees such as Lubrizol. They share the general hazards created by § 365 for all business entities dealing with potential bankrupts in the respects at issue here.

*Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043, 1048 (4th Cir. 1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986) (technology license agreement). *See also In re Logical Software Inc.*, 66 B.R. 683, Bankr.L.Rep. (CCH) ¶ 71,639 (Bankr.D.Mass.1986) (citing and adopting the quoted language).

■ Congress has not placed public utility contracts on par with collective bargaining agreements (§ 1113) and certain real property leases (§ 365). Therefore, in de-

termining the propriety of the debtor's decision to reject the Contract, we are not free to deviate from a traditional business judgment analysis and weigh the effect of rejection on West Penn Power or its customers. *See In re Chi-Feng Huang,* 23 B.R. 798, 801–02 (9th Cir. BAP 1982) ("To the extent the trial court's decision in refusing to authorize rejection of the contract relies upon [the non-rejecting party's] claim of unfairness, it is not consistent with the 'business judgment rule' because it gives insufficient weight to the benefit accruing to the unsecured creditors arising from the rejection.") *See also Borman's, Inc. v. Allied Supermarkets, Inc.,* 706 F.2d 187, 189 (6th Cir.1983), *cert. denied,* 464 U.S. 908, 104 S.Ct. 263, 78 L.Ed.2d 247 (1983) ("As a general rule, a bankruptcy court presented with an application to disaffirm the obligations of an executory contract need determine only ... whether disaffirmance would be advantageous to the debtor ... the burden or hardship which rejection would impose on other parties to such a contract is not a factor to be weighed by the bankruptcy court in ruling on the debtor's application.") (citations omitted); *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 (5th Cir.1985) ("[W]e see no reason to require the debtor to do more than justify its actions under the 'business judgment' standard if creditors object. More exacting scrutiny would slow down the administration of the estate, and threaten the court's ability to control a case impartially.") (footnote omitted).

Additionally, to the extent that state public utility laws conflict with the bankruptcy laws regarding rejection of executory contracts, it is clear that the state laws must give way to the federal bankruptcy laws by virtue of the Supremacy Clause.

Based on the foregoing controlling principles, we conclude that in determining under the business judgment test the propriety of a debtor's decision to reject a public utility contract, we may not weigh the effect of rejection on the public utility, its customers, or state laws regulating public utilities. Accordingly, West Penn Power's allegations, even if true, are not material under the business judgment test.

## II. Whether Rejection will Benefit the Estate

Having concluded that the effect of rejection on other entities is not a material fact to be weighed under the business judgment test, the next question is whether there is a genuine issue as to the only remaining material fact alleged *viz.* that rejection of the Contract will benefit the debtor's estate. If there is no genuine issue, the debtor is entitled to summary judgment as a matter of law.

In support of its allegation that rejection of the Contract will benefit its estate, the debtor offered the affidavit of R.L. Reiter, Energy Manager at Wheeling-Pittsburgh (the "Affidavit"). The Affidavit states that upon rejection of the old Contract (and the accompanying rate Schedule "46"), the debtor would be free to enter into a new contract with West Penn Power under a different rate schedule, rate schedule "44." Rate schedule "44" has lower demand charges than those found in rate schedule "46".

Based upon a comparison of the respective demand charges under Schedules "44" and "46" as applied to actual billings at the debtor's facilities over a six month period, Mr. Reiter concluded that rejection of the current Contract would save the estate approximately $134,000 per month when the steelmaking facilities are in operation, and approximately $116,500 per month when the steelmaking facilities are on shutdown status. The Affidavit stated that the shutdown phase of steel operations would likely continue indefinitely, and the other energy-consuming operations would be maintained at the present or diminished consumption levels. The Affidavit concludes that the savings per month to the debtor as a result of rejection will be consistently over $100,-000 or projected over a two year period, $2,400,000.

West Penn Power's counter-affidavit (the "Counter-Affidavit") does not dispute the savings figures expressed in the debtor's Affidavit. West Penn Power's Counter-Af-

fidavit merely states that rate schedule "44" cannot be used by the debtor, and therefore any projected savings based on rate schedule "44" are misleading. The Counter-Affidavit states that the primary feature of rate schedule "44" service (known as "interruptible power service") is that West Penn Power can interrupt electrical service to the user without notice during periods when customer demands for West Penn Power are high. West Penn Power does not assert that the debtor does not have the option of choosing schedule "44" service. Rather, West Penn Power asserts that the nature of the debtor's rail-making and coke-making operations prohibits immediate interruption of electrical service. Sudden interruption of electrical services, the Counter-Affidavit states, could jeopardize the equipment and goods of the debtor's facilities; and if the debtor refuses to terminate its electrical service upon request, the Counter-Affidavit adds, the debtor would be liable under Schedule "44" for a monetary penalty charge.

In determining the propriety of the debtor's decision to reject the Contract, we are guided by certain well-established principles of law. Ordinarily, courts accord the debtor's business judgment a great amount of deference since the decision to assume or reject an executory contract is an administrative not a judicial matter. *In re By-Rite Distributing, Inc.*, 47 B.R. 660, 668 n. 10 (Bankr.Utah 1985), *reversed on other grounds*, 54 B.R. 740 (D.Utah 1985) (citations omitted). As one court has explained:

> [C]ourt approval under § 365(a), if required, except in extraordinary situations should be granted as a matter of course. To begin, this rule places responsibility for administering the estate with the trustee [or debtor in possession], not the court, and therefore furthers the policy of judicial independence considered vital by the authors of the Code. Second, this rule expedites the administration of estates, another goal of the Bankruptcy Reform Act. Third, the rule encourages rehabilitation by permitting the replacement of marginal with profitable business arrangements. (footnote omitted)

*In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr.D.Utah 1981). Accordingly, the court should not interfere with or second-guess the debtor's sound business judgment unless and until evidence is presented that establishes that the debtor's decision was one taken in bad faith or in gross abuse of its retained business discretion. *Lubrizol*, 756 F.2d at 1047.

■ It follows from the foregoing principles that the issue presented for first instance judicial determination by the Bankruptcy Court is whether the debtor's decision that rejection will be advantageous to the estate is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim, or caprice. *Id.* That issue is one of fact, reviewable by an appellate court under the clearly erroneous standard. *Id.*

■ The debtor has offered sufficient evidence to establish that its decision to reject the Contract will be advantageous to the estate. West Penn Power has not alleged, let alone offered evidence, that the debtor's decision to reject is so manifestly unreasonable that it could not be based on sound business judgment but only on bad faith, or whim or caprice. For this reason alone we can properly grant summary judgment for the debtor.

At best, the facts in West Penn Power's Counter-Affidavit put into issue whether interruptible service under Schedule "44" is *as* economically beneficial to the debtor's business as non-interruptible service under Schedule "46," given the future of the debtor's steelmaking operations. Presumably, the debtor has decided that even with the potential disruption to electrical service and penalty charges, the interruptible service is more economical in the long run than non-interruptible service, in light of the shutdown status of its steelmaking operations. In any event, the facts in West Penn Power's Counter-Affidavit simply manifest a disagreement with the debtor's considered business decision. However, whether the debtor is making the best or even a good business decision is not a material issue of fact under the business judgment test. To avoid rejection of its Contract, West Penn Power must offer evidence that the decision to use interruptible

**850**

service could not be based on sound business judgment but only on bad faith, or whim or caprice. This West Penn Power has not done.

West Penn Power's final argument against rejection is that rejection of the Contract will not simply fail to benefit the estate; it will harm the estate. West Penn Power argues that rejection will result in a 4.5 million dollar unsecured claim which will decrease the eventual dividend to the unsecured creditors in this case.

Once again, however, West Penn Power has failed to raise a material issue of fact under the business judgment test. Presumably, the debtor weighed the potential increase in unsecured claims against the savings resulting from rejection of the Contract, and made its decision in light of that analysis. Several considerations support the soundness of the debtor's decision to reject:

First, the debtor has indicated that it would likely dispute a 4.5 million dollar claim by West Penn Power. It is possible, therefore, that West Penn Power's eventual allowed unsecured claim will increase the total amount of unsecured claims in this case by less than 4.5 million dollars.

Second, even if West Penn Power's claim is allowed to the extent of 4.5 million dollars, that dollar amount, although large in absolute terms, is small relative to the hundreds of millions of dollars of unsecured claims filed in this case. Viewed in proper perspective, then, an additional 4.5 million dollar unsecured claim would not significantly diminish the dividend, if any, forthcoming to the debtor's unsecured creditors.

Third, even if West Penn Power's claim is allowed to the extent of 4.5 million dollars, the eventual dividend to unsecured creditors, if any, may be less than one hundred cents on the dollar. If so, the debtor's estate would realize more money for the unsecured creditors by rejecting the Contract and paying a fraction of the 4.5 million dollar claim than it would by assuming the Contract and paying the full 4.5 million dollars as an administrative expense.

Finally, and quite significantly, the official committee of unsecured creditors, which has been very active in this case, supports the debtor's decision to reject the Contract. It cannot be supposed that the committee of unsecured creditors, which is duty bound to act in the best interests of unsecured creditors, would support a decision which is inimical to the best interests of the debtor's estate and unsecured creditors.

The foregoing considerations support the soundness of the debtor's decision to reject the Contract. In any event, West Penn Power has not alleged facts sufficient to show that the debtor's decision to reject the Contract in the face of a potential 4.5 million dollar unsecured claim is so manifestly unreasonable that it could not be based on sound business judgment.

*Conclusion*

For the reasons discussed above, we find that there is no genuine issue as to any fact that is material under the business judgment test. Therefore, we will grant, by separate order, summary judgment for the debtor on its motion to reject its Contract with West Penn Power.