In re NETWORK ACCESS SOLUTIONS, CORPORATION and NASOP, INC., Debtors.

The Official Committee of Unsecured Creditors Plaintiff,

v.

Jonathon Aust and Stephen Aust, Defendants.

Bankruptcy No. 02–11611(MFW). Adversary No. 04–53849.

United States Bankruptcy Court, D. Delaware.

Aug. 29, 2005.

Thomas G. McCauley, Esquire, Zuckerman Spaeder LLP, Wilmington, DE, for Jonathon and Steven Aust.

L. Jason Cornell, Esquire, Fox Rothschild LLP, Wilmington, DE, Samuel H. Israel, Esquire, Fox Rothschild LLP, Philadelphia, PA, for the Committee.

## *MEMORANDUM OPINION*[1]

MARY F. WALRATH, Bankruptcy Judge.

The Official Committee of Unsecured Creditors (the "Committee") filed a Complaint alleging that Jonathon Aust and Stephen Aust are liable to the bankruptcy estate for receiving excessive and/or unauthorized executive compensation from Network Access Solutions Corporation ("NAS"). The Austs filed a motion to dismiss the Committee's Complaint for failure to state a claim on which relief may be granted. For the reasons stated herein, the Court will grant in part and deny in part the Austs' motion to dismiss.

## I. *BACKGROUND*

NAS was a provider of high speed internet connectivity. Prior to filing a chapter

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

11 petition on June 4, 2002, NAS had about 24,000 lines in service.

Jonathon Aust served as NAS's Chief Executive Officer. Pursuant to his August 16, 1998, employment agreement, Jonathon received a base salary of $240,000, which was to increase at a minimum rate of 5% each year. In addition to his base salary, Jonathon was eligible for an annual cash or stock bonus of 20% of his current salary if he achieved performance goals set by the Board of Directors or the Compensation Committee. The amount of the bonus was to be set and paid each December. Additionally, NAS agreed to reimburse Jonathon Aust for all reasonable and properly vouchered client-related business and entertainment expenses.

Stephen Aust served as NAS's Executive Vice President. Pursuant to his December 31, 2000, employment agreement, Stephen received a base salary of $150,000, which was to increase at a minimum rate of 5% each year. Stephen was also eligible for an annual cash or stock bonus, but his bonus could be as much as 100% of his salary. Like Jonathon, Stephen's bonus was to be set by the Board of Directors or the Compensation Committee and paid each December. NAS also agreed to reimburse him for his expenses.

After executing the employment agreements, NAS experienced a severe financial crisis as a result of weakening conditions in the telecommunications market. Notwithstanding NAS's financial troubles, it paid Stephen Aust a performance bonus of $75,000 in August 2001 and Jonathon Aust a bonus of $100,000 in January 2002. Additionally, the Committee claims that Jonathon Aust received $76,384 and Stephen Aust received $16,032 in improperly documented reimbursements for expenses throughout 2001. The Committee also contends that the Austs received yearly compensation in excess of their respective employment agreements.

Shortly after NAS's bankruptcy filing, it filed a Motion to Enter Into and Assume Amended Employment Agreements with Jonathon Aust and Stephen Aust. The amended employment agreements reflected several changes: Jonathon Aust's base salary increased from $250,000 to $300,000, he became eligible for a $300,000 "change of control bonus," and a severance payment of $300,000 provided he was not terminated for cause and did not voluntarily resign. In return, Jonathon Aust agreed to waive any bonus he was to receive for 2002.

Similarly, Stephen Aust's base compensation increased from $150,000 to $250,000, he became eligible for a retention bonus of $250,000, a "change of control" bonus of $250,000, and a severance payment of $250,000 on the same general terms as Jonathon Aust.

The Committee received notice of the motion to assume the amended employment agreements with the Austs, and by the time of the hearing, the Committee supported the motion. Indeed, the Committee acknowledged at the assumption hearing that all parties had worked very hard to put together a compensation package for the Austs that would give them the incentive to effectively work themselves out of a job. The Committee also represented that they balanced the retention of the Austs against the costs of a crisis manager, but the Committee preferred to have knowledgeable insiders pursuing the reorganization and sale alternatives. On July 29, 2002, the Court approved the assumption motion under section 365(a) of the Bankruptcy Code.

On September 11, 2003, the Court confirmed NAS's amended chapter 11 plan, which granted the Committee standing, under certain specified circumstances, to

pursue causes of action belonging to the estate. On June 3, 2004, the Committee filed a Complaint against the Austs to recover pre-petition payments that were allegedly excessive and/or unauthorized by their pre-petition employment agreements. On July 27, 2004, the Austs filed this motion to dismiss. The matter is fully briefed and ripe for decision.

## II. *JURISDICTION*

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (E), (H), & (O).

## III. *STANDARD OF REVIEW*

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them, and a court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). *See also In re Rockefeller Ctr. Props. Secs. Litig.,* 311 F.3d 198, 215 (3d Cir.2002).

## IV. *DISCUSSION*

The Committee filed a ten count Complaint against the Austs to recover some of the pre-petition executive compensation payments they received from NAS. The Committee alleges that the Austs are liable to the bankruptcy estate for self dealing, breach of fiduciary duties, constructive fraudulent transfers under federal law, actual and constructive fraudulent transfers under Virginia law.

The Austs contend that the Committee has failed to state a claim upon which relief may be granted on six different grounds: (A) all pre-petition transfers were authorized by their employment agreements; (B) the post-petition assumption of the employment agreements precludes the Committee from attacking payments made under them; (C) the Committee is judicially estopped from pursuing its claims; (D) the safe harbor provisions of Delaware's Corporation Law precludes the relief sought; (E) the Committee failed to allege fraud with particularity; and (F) laches bars the Committee's claims.

### A. *Were the Pre–Petition Transfers Authorized?*

■ The Austs contend that all payments made to them were authorized by their employment agreements. The Complaint alleges, however, that several of the payments were not made in accordance with the Austs' pre-petition employment agreements. (Complaint at ¶¶ 23–30.)

The Austs further note that the payments were fully disclosed in NAS's 2001 proxy statement, in NAS's statement of financial affairs filed after the bankruptcy case commenced, and (at least with respect to their salaries) in the assumption motion. The Austs do not explain how mere disclosure of the payments makes them authorized and unavoidable. The Court notes that the statement of financial affairs also requires that a debtor disclose all payments made within the preference period. No one has suggested that because they are disclosed therein that the estate may not avoid them pursuant to section 547.

The Court must accept the well-pled allegations of the Complaint as correct. *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229; *Rockefeller Ctr. Props. Secs. Litig.,* 311 F.3d at 215. The Complaint asserts that certain transfers to the Austs were not authorized. Therefore, at this stage the

Court cannot conclude that all the payments were authorized as the Austs assert. Therefore, the Complaint cannot be dismissed simply on the basis of the Austs' assertion in their pleadings that all the transfers were authorized.

### B. *Assumption of the Employment Contracts*

The Committee alleges that the Austs engaged in self-dealing, breached fiduciary duties, and effected fraudulent transfers (both constructive and actual) by receiving excessive and/or unauthorized executive compensation from NAS. The Austs argue that any pre-petition transfer made to them under their employment agreements is immune from attack because NAS assumed their pre-petition employment agreements, as amended, in its bankruptcy case. The Committee contends that the employment agreements were not assumed, but instead NAS executed new employment agreements with the Austs post-petition.

#### 1. *Were the Contracts Assumed?*

■ Specifically, the Committee asserts that it is axiomatic that the assumption of a contract requires that the contract be assumed as is, without any modification. *See, e.g., L.R.S.C., Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 298 (3d Cir.2000) ("Once the trustee satisfies these requirements [of section 365] it may assume the contract or lease, but it must do so in its entirety."); *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir.1996) (holding that an executory contract must either be assumed or rejected in its entirety and a debtor cannot chose to assume some provisions of a contract but reject others); *In re Fleming Cos.*, No. 03–10945, 2004 WL 385517 at *3, 2004 Bankr.LEXIS 198 at *7 (Bankr.

D.Del. Feb. 27, 2004) ("[A] debtor's assumption ... cannot modify an agreement's express terms ...."). In this case, however, the assumption motion filed by NAS sought approval of contracts that were significantly different from the pre-petition employment agreements. Thus, the Committee asserts that there was not really an assumption of the pre-petition agreements.

While the amended employment agreements executed by NAS contain different terms from the pre-petition agreements, nothing prevented NAS from amending the pre-petition contracts once they were assumed—especially when the parties in interest consented to the modification. *E.g., City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir.1995) ("We cannot agree that § 365 limits the partnership to assuming or rejecting the ... lease with all of its benefits and burdens intact.... 'Nothing in the Code suggests that the debtor may not modify its contracts when all parties to the contract consent.' ") (citation omitted).

■ In the absence of bankruptcy, NAS would have been free (subject to applicable non-bankruptcy law) to modify the employment agreements. Section 363 of the Bankruptcy Code allows a debtor to enter into contracts (and modify contracts) in the ordinary course of business. 11 U.S.C. § 363(c)(1). To the extent they are outside the ordinary course of business, court approval is necessary. 11 U.S.C. § 363(b). The Motion filed by NAS seeking to assume the employment agreements, as modified, also relied on section 363(b)(1) to support the relief requested, although the order granting the motion referenced only section 365.

■ There is, however, no discernable difference in the notice requirements or standard for approval under section 363 and 365. *E.g., Richmond Leasing Co. v.*

*Capital Bank, N.A.*, 762 F.2d 1303, 1311–12 (5th Cir.1985) (concluding that the business judgment standard for executing a post-petition agreement is the same standard used in approving the assumption of an executory contract under section 365). The order entered on the assumption motion represented an agreement by all the pertinent parties, including the Committee which participated and supported the Motion at the approval hearing. Accordingly, the Court concludes that NAS did assume the pre-petition employment agreements of Jonathon and Stephen Aust and then modified the terms of those agreements in its bankruptcy case.

### 2. *Does Assumption Bar Recovery?*

Because the pre-petition employment agreements were assumed, the Austs argue that any payments made pursuant to those agreements cannot be avoided by the Committee under any of the theories of recovery asserted by the Committee.

■ The standard for approving the assumption of an executory contract is the business judgment rule. *E.g., Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir.1993) ("[A] bankruptcy court reviewing a trustee's or debtor-in-possession's decision to assume or reject an executory contract should examine a contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it."); *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989) (same); *In re Wheeling–Pittsburgh Steel Corp.*, 72 B.R. 845, 846 (Bankr. W.D.Pa.1987) (same). "Business judgment" is defined as "[t]he presumption that in making business decisions not involving direct self-interest or self-dealing, corporate directors act on an informed basis, in good faith, and in the honest belief that their actions are in the corporation's best interest." *Black's Law Dictionary* 212 (8th ed.2004).

■ Accordingly, to approve the assumption motion, the Court had to find that NAS was acting on an informed basis, in good faith, and with the honest belief that the assumption of the employment agreements was in the best interests of NAS and the estate. This finding is too antithetical to the Committee's causes of action to allow for the recovery of any authorized transfers from NAS to the Austs under their respective employment agreements.

■ The same analysis does not, however, apply to transfers that were not authorized or were outside the scope of the Austs' pre-petition employment agreements. To the extent that pre-petition transfers made to the Austs were not expressly authorized by the Austs' pre-petition employment agreements, or to the extent that payments fell outside the scope of those agreements, then the Court has not previously determined that the transfers were made pursuant to NAS's sound business judgment. In addition, such transfers are not amounts that would need to be cured on the assumption of the employment agreements. In short, no insuperable bar to relief exists for the Committee to recover such transfers.

### a. *Constructive Fraudulent Transfers*

■ The Committee alleges that Jonathon and Stephen Aust received constructive fraudulent transfers from NAS which are avoidable under the Bankruptcy Code and Virginia law. An essential element of a constructive fraudulent transfer claim under federal law is that the transfer be made for less than "a reasonably equiv-

alent value." 11 U.S.C. § 548(a)(B)(i). Virginia law requires a constructive fraudulent transfer to be one that is "not upon consideration deemed valuable in law." Va.Code Ann. § 55–81. The time for determining the value of a transfer is when the transaction was made. *E.g., Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L, Inc. (In re R.M.L., Inc.),* 92 F.3d 139, 151 (3d Cir. 1996) (stating that money spent on a losing investment may nevertheless constitute value; a court should not view "events with the benefit of hindsight to conclude that any transfer that did not bring in the actual, economic equivalent of what was given up fails to confer reasonably equivalent value as a matter of law."); *Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.),* 914 F.2d 458, 466 (4th Cir.1990) ("The date for defining such reasonable equivalence is the date of the transfer.").

■ The Court has already determined that the assumption of the Austs' employment agreements was within NAS's sound business judgment. That conclusion is now the law of the case. *E.g., Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815–16, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (explaining that the doctrine of law of the case applies when a court makes a decision on a rule of law and the decision subsequently governs the same issues in the later stages of the same case; the rule "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.' ") (citation omitted).

■ It would not have been a sound exercise of NAS's business judgment to assume the employment agreements if it was not receiving equivalent value for the payments it was making under the agreements. Additionally, NAS sought, and the Court approved modified agreements which sought to pay the Austs more than the pre-petition agreements. Because the modified agreements were approved, the Court cannot conclude that NAS did not receive reasonably equivalent value for the lesser payments it made pursuant to the pre-petition agreements.

■ Further, when a contract is assumed under section 365, all unpaid amounts due under the agreement must be paid. 11 U.S.C. § 365(b)(1). A pre-petition payment cannot be cured if it is to be avoided. *See, e.g., In re Superior Toy & Mfg. Co.,* 78 F.3d 1169, 1174 (7th Cir.1996) ("If Congress had intended to deprive contracting parties of monies they received prepetition, why would Congress require that all defaults be cured prior to assumption? . . . We believe Congress passed § 365 to insure that a contracting party is made whole before a court can force the party to continue performing with a bankrupt debtor."); *Philip Servs. Corp. v. Luntz (In re Philip Servs., Inc.),* 284 B.R. 541, 553 (Bankr.D.Del.2002) (concluding that "once an executory contract is assumed, the trustee or debtor may not maintain a preference action to recover payments made prepetition pursuant to that contract."), *aff'd,* 303 B.R. 574 (D.Del. 2003).

Therefore, the Court concludes that the Committee cannot maintain a cause of action to recover authorized transfers that NAS made to the Austs under a constructive fraudulent transfer cause of action. To the extent the Committee's constructive fraudulent conveyance claims are based on the transfer of unauthorized payments, or payments outside the scope of the employment agreements, however, the Court will deny the Austs' motion to dismiss.

b. *Actual Fraud*

■ The Committee also asserts that the Austs caused NAS to pay them excess

bonuses and salaries with the intent to delay, hinder, or defraud creditors. In contrast to constructive fraud, which does not require any malevolent intent, a claim for actual fraud requires that there be conscious wrong-doing. *E.g., Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*, 181 F.3d 505, 514 n. 8 (3d Cir.1999) (noting that 11 U.S.C. § 548(a)(1)(A) requires an actual intent to defraud); *In re Decker*, 295 F.Supp. 501, 507 (W.D.Va. 1969) (stating that Va.Code Ann. § 55–80 requires an intent on the part of the debtor to delay, hinder, or defraud creditors), *aff'd sub nom. Woodson v. Gilmer*, 420 F.2d 378 (4th Cir.1970).

■ The Court concludes that this claim is also precluded by its approval of NAS's assumption of the Austs' pre-petition employment agreements, to the extent it seeks to recover transfers which were authorized by the pre-petition agreements. An agreement cannot be in a debtor's sound business judgment if the transfers under the agreement were made with the actual intent to hinder, delay and defraud creditors. Good faith—the foundation of the business judgment test—cannot co-exist with actual fraud.

On the other hand, to the extent that any pre-petition payment was not authorized by the Austs' employment agreements, or was made outside the scope of the employment agreements, then nothing about the assumption order would prevent the Committee from pursuing a claim for an intentional fraudulent transfer inasmuch as such transfers never received Court approbation.

### c. *Breach of Fiduciary Duty and Self–Dealing*

The Committee also alleges that the Austs owed a fiduciary duty to NAS to act with due care, loyalty, and good faith with respect to the payment of salary and bo-

nuses, and that the Austs owed a fiduciary duty to creditors of NAS not to accept excessive bonus payments and salary increases while NAS was "in the vicinity of insolvency."

■ "Informed decisions regarding employee compensation by independent boards are usually entitled to business judgment rule protection." *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 799 (Del.Ch.2004).

■ The Court has already approved the assumption of the amended employment agreements as being an exercise of NAS's sound business judgment. Therefore, the Committee has failed to state a claim for breach of fiduciary duty and self-dealing as to the authorized payments. With respect to the alleged unauthorized payments, however, no previous decision of the Court precludes the Committee from pursuing them.

### C. *Estoppel*

The Austs contend that the Committee should be estopped from seeking to attack payments that NAS made to the Austs under their employment agreements due to the Committee's support and participation in the assumption of those agreements.

■ Judicial estoppel precludes a party from obtaining relief under one theory and later taking a contradictory position. *E.g., Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir.1996) (" 'The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.' ") (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and*

*Procedure* § 4477 (1981)); *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1217–18 (6th Cir.1990) ("Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment."); *Paul v. Monts,* 906 F.2d 1468, 1473 (10th Cir. 1990) ("A litigant is required to be consistent in his conduct. He may not maintain a position regarding a transaction wholly inconsistent with his previous acts in connection with that same transaction."); *Lewis Indus. v. Barham Constr., Inc.,* 878 F.2d 1230, 1231 (9th Cir.1989) (affirming a ruling that estopped the debtor from arguing breach of contract after it failed to raise the issue at the assumption hearing).

In this case, judicial estoppel prevents the Committee from supporting the assumption of the agreements as a sound exercise of NAS's business judgment and then attempting to recover all authorized, contractual payments as fraudulent transfers or breaches of fiduciary duties. By supporting the assumption motion, the Committee was able to reap the advantage of the specialized knowledge and expertise possessed by the Austs to maximize the value of NAS in its bankruptcy case. Having reaped this advantage, the Committee cannot now seek to destroy the incentives offered to the Austs. Judicial estoppel prevents the Committee from asserting that the transfers authorized by the pre-petition agreements can be recovered. Nothing in the Committee's support of the assumption of the employment contracts, however, is inconsistent with the Committee's claims with respect to the unauthorized payments.

### D. *Safe Harbor*

The Austs argue that the Committee cannot state a claim for breach of fiduciary duties or self dealing because section 144 of the Delaware Corporation Law provides them with safe harbor protection. Del.Code Ann. tit. 8, § 144. The intent of section 144 is to remove the taint of a director's self-interest in a transaction where there is an approving vote of a majority of the informed and disinterested directors. *E.g., Cede & Co. v. Technicolor,* 634 A.2d 345, 363 (Del.1993), *reh'g,* 636 A.2d 956 (Del.1994). The decision of a majority of the disinterested directors to execute a transaction with an interested director is subject to the business judgment rule. *Oberly v. Kirby,* 592 A.2d 445, 466 (Del.1991).

To establish protection under section 144, however, requires evidence that the transfers had the approval of a disinterested majority of the board of directors and that approval was a sound exercise of the directors' business judgment. They are material issues of disputed fact and cannot be determined in the context of the Austs' motion to dismiss.

### E. *Particularity*

The Austs also assert that the Committee's claims to recover transfers alleged to be actually fraudulent under Virginia law should be dismissed on the basis that the Committee has failed to allege fraud with particularity.

Rule 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). The requirements of particularity vary depending on the facts of a case, but at a minimum, a party should allege "the time, place, and contents of the [fraud], as well as the identity of the person [involved in the fraud] and what he obtained thereby." *Harrison v. Westinghouse Savannah Riv-*

*er Co.,* 176 F.3d 776, 784 (4th Cir.1999). In making this determination, the Complaint should be viewed as a whole with due regard given to the presence of justiciable, realistic factual situations. *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 263 (3d Cir.1998).

 In its Complaint, the Committee alleges that Jonathon and Stephen Aust received unauthorized salary increases, bonuses, and payments totaling several hundred thousand dollars from NAS on specified dates. The Committee also alleges that the Austs took the specified unauthorized payments from NAS while it was in the zone of insolvency with the intent to deprive NAS's creditors of those sums. This is sufficient specificity to meet the requirements of Rule 9(b). Therefore, the Court will deny the Austs' motion to dismiss on this basis.

### F. *Laches*

The Austs contend that the Committee's claims for turnover of pre-petition funds paid to the Austs for allegedly unauthorized reimbursement of business expenses and monthly car allowances is barred by the doctrine of laches.

 The equitable defense of laches is available when a party has knowledge of a claim, there is an inexcusable delay in bringing the action, and the delay is prejudicial to the defendant. *E.g., Cantor v. Perelman,* 414 F.3d 430, 439–40 (3d Cir. 2005); *In re Mushroom Transp. Co.,* 382 F.3d 325, 337 (3d Cir.2004).

 In this case, NAS filed bankruptcy on June 4, 2002, and the Court confirmed its plan on September 11, 2003. Pursuant to the plan, the Committee was assigned certain claims, including this adversary proceeding which was filed on June 4, 2004. The filing of this proceeding is within the two year statute of limitations for avoiding powers. 11 U.S.C. § 546(a)(1)(A). There are no specific facts showing this to be an inexcusable delay.

The Austs claim that they are prejudiced because they no longer have access to the records of NAS and the location of those records is unclear. The Austs have not shown, however, that the pertinent records have been destroyed or are beyond their reach using legal process. Accordingly, the Austs have not demonstrated either an inexcusable delay or a prejudice sufficient to invoke the equitable doctrine of laches.

### V. *CONCLUSION*

To the extent that pre-petition transfers were made from NAS to the Austs that were authorized by the express terms of the pre-petition employment agreements, the Committee is precluded from recovering those transfers under the doctrine of law of the case and judicial estoppel because of the assumption of the employment agreements. To the extent that pre-petition transfers were made from NAS to the Austs that were not authorized by the express terms of the assumed, pre-petition employment agreements, or that were made outside the express terms of the assumed agreements, however, the Committee has stated justiciable claims for relief. Therefore, the Austs' motion to dismiss will be granted in part and denied in part.