**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3478
_____

IN RE: MUSTAFA TAYFUR,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-14-cv-00413)
District Judge: Honorable Arthur J. Schwab
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 17, 2015

Before:   SMITH, JORDAN and VAN ANTWERPEN, *Circuit Judges*.

(Filed: March 18, 2015)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VAN ANTWERPEN, *Circuit Judge*.

Appellant Mustafa Tayfur brings this action to challenge the final decision of the District Court for the Western District of Pennsylvania, dated July 7, 2014, affirming the denial of his motion to reject an unexpired lease pursuant to 11 U.S.C. § 365. *In re Mustafa Tayfur*, 513 B.R. 282, 292 (W.D. Pa. 2014). For the reasons that follow, we will affirm the decision of the District Court.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because we write only for the parties, we will only set forth the facts necessary to inform our analysis. Mustafa Tayfur ("Tayfur") owns approximately 107 acres of land in Butler County, Pennsylvania. On December 28, 2005, Tayfur executed a lease agreement granting Central Appalachian Petroleum ("CAP") oil and gas extraction rights. The agreement was signed by Tayfur, but it was never signed by a CAP representative. The lease had a primary term of ten years. Under the lease, CAP was obligated to pay Tayfur an annual payment of $3.00 per acre, or $321.00 per year. If oil or gas extraction commenced, CAP was obligated to pay Tayfur royalties amounting to one-eighth of the revenues realized from that extraction.

After the expiration of the lease's primary term, the lease could be extended if CAP either (1) continued to pay Tayfur the annual payments under the lease, or (2) commenced extraction procedures. CAP timely made payments under the lease until it assigned the lease to East Resources, Inc. ("East") on July 14, 2006. SWEPI L.P. ("SWEPI") is East's successor-by-merger. After SWEPI took over the lease, it too made

timely payments to Tayfur. Tayfur cashed all checks he received pursuant to the lease agreement.

On November 14, 2011, Tayfur voluntarily filed a petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code. The interim plans Tayfur filed with the Bankruptcy Court for the Western District of Pennsylvania ("Bankruptcy Court") communicated his intention to fund his bankruptcy through payments received under his oil and gas lease. However, after SWEPI had still not begun extraction in early 2013, Tayfur began discussing the sale of his oil and gas rights to other parties. On February 17, 2013, Tayfur received a letter discussing a proposed offer to buy his mineral rights from Thomas E. McMaster, an agent for Bounty Minerals. Shortly thereafter, on February 20, 2013, Tayfur filed a motion to reject his lease with SWEPI pursuant to 11 U.S.C. §§ 365(a) and (d)(2), which permit a trustee to reject unexpired leases of the debtor where doing so would benefit the bankruptcy estate. SWEPI opposed the motion.

At an evidentiary hearing held by the Bankruptcy Court on October 22, 2013, Lester Hebert testified on behalf of SWEPI. Hebert, a SWEPI land representative, testified that rejecting the lease with SWEPI would not benefit Tayfur's estate. Hebert explained that drilling companies preferred to drill lateral, rather than vertical, wells. He also testified that, because Tayfur's parcel of land was not large enough to accommodate a lateral well, it had limited value for a drilling company that did not own the adjoining land parcels.[1]

---

[1] Tayfur's property was primarily surrounded by property leased to SWEPI. Hebert also explained that Tayfur's parcel's close proximity to a state park made lateral

3

Pennsylvania attorney Harry Klodowski testified at the hearing on behalf of Tayfur. Klodowski's testimony conflicted with Hebert's, as Klodowski stated that forfeiting the lease with SWEPI would benefit Tayfur's bankruptcy estate because leases were "like playing cards" that were "routinely traded between companies." (Appx. at 216, lns. 12–13). Tayfur also submitted an affidavit from Klodowksi stating that Tayfur's lease with SWEPI contained a price term significantly below market value.

On February 26, 2014, the Bankruptcy Court denied Tayfur's motion to reject his lease with SWEPI. *In re Tayfur*, 505 B.R. 673, 684 (Bankr. W.D. Pa. 2014). The Bankruptcy Court found that the Pennsylvania Landlord and Tenant Act of 1951 did not govern the oil and gas lease between the parties. *Id.* at 677. It accordingly rejected Tayfur's argument that the lease was an "at will" lease under Pennsylvania law and could therefore be cancelled by him at any time, regardless of whether the requirements of 11 U.S.C. § 365 were satisfied. *Id.* The Bankruptcy Court also rejected Tayfur's arguments that the original lease itself and the assignment of the lease were both cancellable at will because they violated Pennsylvania's statute of frauds. *Id.* at 679–81. After disposing of those preliminary arguments raised by Tayfur, the Bankruptcy Court addressed the merits of Tayfur's motion to reject the lease pursuant to § 365 and found that rejection would not benefit his estate. *Id.* at 682–84. It therefore denied his motion to reject the lease. *Id.* at 684.

---

drilling on that parcel even more problematic.

Tayfur appealed that decision to the District Court for the Western District of Pennsylvania ("District Court"). The District Court affirmed the decision of the Bankruptcy Court. *In re Mustafa Tayfur*, 513 B.R. 282, 292 (W.D. Pa. 2014). Tayfur timely filed this appeal on July 31, 2014.

## II. DISCUSSION[2]

### 1. *Standard of Review*

This Court "exercise[s] plenary review of an order issued by a district court sitting as an appellate court in review of the bankruptcy court." *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citing *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 125 (3d Cir. 2000)). We review legal conclusions *de novo*. *Id.* We review factual findings under a "clearly erroneous standard." *See* Fed. R. Bankr. P. 8013 advisory committee's note ("This rule accords to the findings of a bankruptcy judge the same weight given the findings of a district judge under [Federal Rule of Civil Procedure 52]."); Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous . . . ."). We review mixed questions of law and fact under a mixed standard—reviewing key facts under the clearly erroneous standard and reviewing

---

[2] The Bankruptcy Court had subject matter jurisdiction over the initial proceedings pursuant to 28 U.S.C. §§ 157, 1334(b) (2012), as the matter is a core matter as defined in 28 U.S.C. § 157(b)(2)(A). The District Court had appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1), as the Bankruptcy Court entered a final order denying Tayfur's motion to reject an unexpired lease pursuant to 11 U.S.C. § 365. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d)(1).

the bankruptcy court's application of the law to those facts *de novo*. *In re CellNet*, 327 F.3d at 244.

2. *Tayfur's Arguments Under Pennsylvania Law*

On appeal, Tayfur generally challenges the denial of his motion to reject his unexpired lease with SWEPI pursuant to 11 U.S.C. § 365. Before we reach that argument, we first analyze certain arguments raised by Tayfur under Pennsylvania state law. Tayfur argues on appeal that this Court need not determine whether rejection of the lease is appropriate under § 365 because the lease can be terminated by Tayfur at any time. (Appellant Br. at 14–24). Specifically, Tayfur argues that the lease is terminable at his will because (1) the lease is an "at-will" lease under Pennsylvania's Landlord and Tenant Act of 1951, (2) the lease itself violates Pennsylvania's statute of frauds, and (3) CAP's assignment of the lease to East violates Pennsylvania's statute of frauds. We examine each argument in turn.

A. *"At-Will" Lease*

Tayfur first argues that he can terminate the lease at any time because the lease is an "at will" lease under Pennsylvania state law. To support this argument, Tayfur relies on section 250.202 of Pennsylvania's Landlord and Tenant Act of 1951. 68 Pa. Stat. § 250.202 (West 2014). This section provides that leases of real property (including personal property) that have a duration longer than three years must be "in writing and signed by the parties." *Id.* If such a lease is not signed and in writing, then "it shall have the force and effect of a lease at will only and shall not be given any greater force or effect either in law or equity." *Id.* This provision initially appears to apply to the lease at

6

issue. First, the duration of the lease at issue did exceed three years: it had a primary term of ten years. (Appx. at 112). Further, it is undisputed that CAP—an original party to the lease—did not sign the lease. (*Id.* at 113).

However, as noted by both the Bankruptcy and District Courts, Tayfur's argument cannot withstand further scrutiny of the *type* of lease at issue in this case. Section 250.202 is part of Pennsylvania's Landlord and Tenant Act of 1951. The lease between the parties is not a landlord-tenant agreement; rather, it is an oil and gas lease. As explained by the Bankruptcy and District Courts, oil and gas leases are "far from the simplest of property concepts." *In re Tayfur*, 513 B.R. at 287 (quoting *Brown v. Haight,* 255 A.2d 508, 510 (Pa. 1969)); *In re Tayfur*, 505 B.R. at 681 (same). "A mineral lessee is unquestionably more in the position of a purchaser than in that of a mere occupant of the land." *Kepple v. Fairman Drilling Co.*, 551 A.2d 226, 230 (Pa. Super. Ct. 1988) (quoting *Arkansas Louisiana Gas Co. v. Evans*, 338 S.W.3d 666, 669 (Ark. 1960)).

For these reasons, Pennsylvania courts have held that oil and gas leases in Pennsylvania are not governed by Pennsylvania's Landlord and Tenant Act of 1951. *E.g.*, *Derrickheim Co. v. Brown*, 451 A.2d 477, 479 (Pa. Super. Ct. 1982) ("[O]il and gas leases are not controlled by normal landlord and tenant law." (citing Kuntz, A Treatise on The Law of Oil and Gas, section 52.1 (1978))). Pennsylvania law therefore dictates that the lease at issue is not governed by Pennsylvania's Landlord and Tenant Act of 1951. Tayfur's arguments that the lease is terminable at will based on his interpretation of that statute are accordingly without merit.

#### B.     Statute of Frauds

Tayfur's next argument on appeal is that CAP's failure to sign the lease at issue caused the lease to expire on December 28, 2008[3] and become an "at will" lease for each year thereafter. (Appellant Br. at 16). We disagree. At the outset, we note that our analysis of the statute of frauds in the context of oil and gas leases differs from our statute of frauds analysis for standard landlord-tenant leases. *See Nolt v. TS Calkins & Assocs.*, 96 A.3d 1042, 1047 (Pa. Super. Ct. 2014) (stating that an oil and gas lease "is subject to the general statute of frauds, not the statute of frauds contained in the Landlord and Tenant Act").[4]

Pennsylvania's general statute of frauds provides that "all leases, estates, [and] interests," which are not put into writing and signed "by the parties so making or creating the same . . . shall have the force and effect of leases or estates at will only." 33 Pa. Stat. § 1 (West 2014). The general statute of frauds applies to "all leases not exceeding the term of three years from the making thereof." *Id.* As noted above, it is undisputed that the lease at issue had a duration exceeding three years. (Appx. at 112).

However, the signature requirement of Pennsylvania's general statute of frauds applies only to the party granting the interest, also known as the lessor. *Nolt*, 96 A.3d at

---

[3] The lease is dated December 28, 2005. (Appx. at 112). Pennsylvania's statute of frauds applies to lease agreements with durations of three years or longer. 33 Pa. Stat. § 1 (West 2014). December 28, 2008 is three years after the lease signing date. In Pennsylvania, the Statute of Frauds has the effect of shortening the duration of—as opposed to voiding or invalidating—a lease to which it applies. *Ferri v. Liberatoscioli*, 13 A.2d 45, 45 (Pa. 1940).

[4] We also note that Tayfur relies on Pennsylvania's general statute of frauds in his brief. (*E.g.*, Appellant Br. at 14).

8

1047; *Trowbridge v. McCaigue*, 992 A.2d 199, 201 (Pa. Super. Ct. 2010); *see also Long v. Brown*, 582 A.2d 359, 361 (Pa. Super. Ct. 1990) ("The Statute of Frauds instructs that a purported transfer of an ownership interest in real property is not enforceable unless evidenced in writing and signed by the party(ies) granting the interest."). Here, Tayfur was the lessor in the parties' oil and gas lease, and he signed the lease. (Appx. at 112–13). Therefore, the original lease between the parties satisfies Pennsylvania's general statute of frauds.

### C.    *Validity and Enforceability of Lease Assignment*

Tayfur next argues on appeal that the "lack of any writing signed by the lessor/debtor to authorize the assignment of the oil and gas lease [from CAP to East, SWEPI's predecessor-in-interest], leaves SWEPI with a lease at will, only, and nothing more, due to the operation of the Statute of Frauds." (Appellant Br. at 22). Tayfur asserts that CAP's assignment of its interest to East is invalid because (1) "[n]owhere in the gas and oil lease is there any language which authorizes any assignment of the lease," and (2) "Tayfur's signature does not appear anywhere on the assignment of the lease." (*Id.*).

This argument is inapposite. It is a general principle of oil and gas law that a lessee is free to assign its interest, absent an express clause stating otherwise. 2 Eugene Kuntz, A Treatise on the Law of Oil and Gas, § 35.2(a) (Anderson Publishing 1989); 2 Walter L. Summers, The Law of Oil and Gas § 28.14 (West 3d ed. 2011). This principle of free assignability stems from either (1) a lease provision explicitly authorizing assignment, or (2) a lease provision implicitly authorizing assignment by referencing the lease's binding effect on heirs and assigns. Kuntz, A Treatise on Oil and Gas, § 35.2; *see*

9

*also* Patrick H. Martin and Bruce M. Kramer, *Williams & Meyers, Oil and Gas Law* § 402 (LexisNexis Matthew Bender 2013) ("In other instances, authority to assign is found by implication from a provision of the lease concerning the running of the covenants of the lease to assignees.").

The original lease between Tayfur and CAP did not contain any clause limiting either party's ability to assign its rights or duties under the lease. (Appx. at 112–13). Rather, the lease implicitly authorized assignment through its "Successors" clause: "All rights, duties, and liabilities herein benefit and bind Lessor and Lessee and their heirs, successors, and assigns." (*Id.* at 113). Therefore, CAP was free to assign the lease to East.

For CAP's assignment to East to be valid, it must also satisfy the statute of frauds. *See* 2 Summers, The Law of Oil and Gas § 28.14 ("A contract for the sale or assignment of an oil and gas lease is one involving the sale or transfer of an interest in land within the meaning of the statute of frauds and, to be enforceable, must be in writing."). As already stated, Pennsylvania's general statute of frauds applies to oil and gas leases. 33 Pa. Stat. § 1 (West 2014). To satisfy section 1's signature requirement, only the party granting the interest must sign the relevant writing. *Nolt*, 96 A.3d at 1047; *Long*, 582 A.2d at 361. Here, CAP was the party assigning, or granting, its interest to East. The assignment contract at issue was signed by J.E. Kapp, the President of CAP. (Appx. at 145). Therefore, we find that the assignment of CAP's rights under the oil and gas lease to East satisfies Pennsylvania's general statute of frauds and is valid. We accordingly reject Tayfur's argument.

### 3. *Tayfur's Motion to Reject the Lease Under 11 U.S.C. § 365*

Having determined that the lease between the parties is not terminable at Tayfur's will under Pennsylvania law, we now turn to the denial of his motion to reject the lease under 11 U.S.C. § 365. That section provides that a trustee "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a) (2012). A motion to reject an unexpired lease in a Chapter 13 bankruptcy proceeding may be made "at any time before the confirmation of a plan." *Id.* § 365(d)(2). Tayfur's motion satisfies § 365(d)(2)'s requirements because, at the time Tayfur made his motion to reject the lease with SWEPI, the primary term of the lease had not expired. (*See* Appx. at 112 (setting forth a primary term of ten years, to expire on December 28, 2015)). Further, at the time of the motion, the Bankruptcy Court had only confirmed Tayfur's proposed original and amended plans on an interim—as opposed to final—basis.

A trustee's ability to reject an unexpired lease is subject to court approval. 11 U.S.C. § 365(a). Section 365(a) of the Bankruptcy Code does not articulate a standard for when rejection is appropriate, therefore this Circuit uses the business judgment standard to make that determination. *Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989) (citing *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987)). Under this standard, rejection is appropriate where it would benefit the bankruptcy estate. *Id.* The Bankruptcy Court found, and the District Court agreed, that rejecting Tayfur's lease would not benefit his estate. *In re Tayfur*, 513 B.R. at 291–92; *In re Tayfur*, 505 B.R. at 684. Tayfur challenges these findings on two grounds. We will address each of his arguments in turn.

11

### A. SWEPI's Possessory Rights Under 11 U.S.C. § 365(h)(1)(A)(ii)

In finding that rejecting the lease with SWEPI would not benefit Tayfur's estate, both the Bankruptcy and District Courts relied on the fact that rejection of the lease under § 365 would not extinguish SWEPI's possessory rights under the lease. *In re Tayfur*, 513 B.R. at 291; *In re Tayfur*, 505 B.R. at 683–84. On appeal, Tayfur challenges this finding—arguing that Pennsylvania law dictates that Tayfur can "give notice to quit and pursue an ejectment action against SWEPI," thus terminating SWEPI's possessory right. (Appellant Br. at 24–25). We do not find this argument persuasive.

Under 11 U.S.C. § 365(h)(1)(A)(ii), where the trustee rejects an unexpired lease, but that lease's term has already commenced:

> the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, *possession*, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

11 U.S.C. § 365(h)(1)(A)(ii) (2012) (emphasis added). Under this provision, SWEPI would continue to have possessory rights over Tayfur's property at least until the end of the primary lease term, December 28, 2015. Tayfur's challenges to this finding are contingent upon this Court agreeing with his arguments (1) that Pennsylvania's Landlord and Tenant Act of 1951 governs the parties' rights under the oil and gas lease at issue, and (2) that the lease agreement did not satisfy the statute of frauds. (Appellant Br. at 25). We were not persuaded by either of those arguments. *See supra* Parts II.2.A, B. We

12

therefore find that the Bankruptcy and District Courts did not err in finding that SWEPI could maintain its possessory right in Tayfur's property pursuant to § 365(h)(1)(A)(ii).

### B. District Court's Factual Findings

Finally, Tayfur argues that the Bankruptcy Court made factual findings that were clearly erroneous when it determined that rejection of the SWEPI lease would not benefit Tayfur's estate. (Appellant Br. at 25–27). We review the factual findings of the Bankruptcy Court for clear error. Fed. R. Bankr. P. 8013 advisory committee's note; Fed. R. Civ. P. 52(a)(6). Under this standard, we will only overturn a factual finding if, based on the entirety of the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *In re CellNet*, 327 F.3d at 244 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Further, this standard dictates that we "must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6).

Here, the Bankruptcy Court weighed the competing evidence offered by the parties and found that: "[b]ased on the testimony of [Tayfur] and witnesses, the Court finds that [Tayfur] did not meet his burden of showing that the rejection of the lease would be in the best interest of the estate." *In re Tayfur*, 505 B.R. at 683. The Bankruptcy Court grounded this decision in significant evidentiary support, including (1) its comparison of the testimony of Klodowski versus the testimony of Hebert, (2) its review of the evidence offered by those two witnesses, and (3) its analysis of Tayfur's own testimony. *Id.* at 683–84. We are not convinced that "a mistake has been committed." *In re CellNet*, 327 F.3d at 244 (quoting *United States Gypsum Co.*, 333 U.S. at 395). We

13

accordingly reject Tayfur's argument that the Bankruptcy Court's factual findings were clearly erroneous and affirm its decision that rejection of the lease was not in the best interests of Tayfur's estate.

### III.   CONCLUSION

For the foregoing reasons, we will affirm.